EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Longina García Gómez y Filbert Pacheco Tuttle<br><br>Recurrido<br><br>vs.<br><br>Estado Libre Asociado de Puerto Rico y Otros<br><br>Peticionario | Certiorari<br><br>2005 TSPR 14<br><br>163 DPR ____ |

Número del Caso: CC-2002-915

Fecha: 24 de febrero de 2005

Tribunal de Circuito de Apelaciones:

Circuito Regional IV

Juez Ponente:

Hon. Carmen Ana Pesante Martínez

Abogado de las Partes Recurridas:

Lcdo. Alberic Prados Bou

Oficina del Procurador General:

Lcda. Miriam Álvarez Archilla
Procuradora General Auxiliar

Materia: Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Longina García Gómez y
Filibert Pacheco Tuttle

    Recurridos

        vs.                         CC-2002-915     CERTIORARI

Estado Libre Asociado de
Puerto Rico y otros

    Peticionario

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LOPEZ

En San Juan, Puerto Rico, a 24 de febrero de 2005

El 8 de mayo de 2000, el Departamento de la Familia, por conducto de uno de los funcionarios adscritos al Programa de Emergencias Sociales, la Sra. Brenda Serrano, removió a la menor de edad, M.P.G., de la custodia de sus padres, la Sra. Longina García Gómez y el Sr. Filibert Pacheco Tuttle, de conformidad con las disposiciones de la Ley Núm. 342 de 16 de diciembre de 1999, conocida como "Ley para el Amparo a Menores en el Siglo XXI", 8 L.P.R.A. sec. 441, *et seq.*[1]

---

[1] Esta Ley fue derogada por la Ley Núm. 177 del 1 de agosto de 2003, conocida como "Ley para el Bienestar y Protección Integral de la Niñez", 8 L.P.R.A. sec. 444 *et seq.*

La remoción hecha por el Departamento de Familia se fundamentó en una confidencia recibida en la cual se le imputaba a los recurridos estar maltratando emocionalmente a su hija menor, en estado de embarazo, en relación con lo cual, alegadamente, sus padres tenían planificado llevarla a California para que se le practicara un aborto.

Al día siguiente, el 9 de mayo de 2000, la funcionaria del Departamento de la Familia instó ante un magistrado del Tribunal Municipal de San Juan la correspondiente petición de remoción de custodia. El tribunal ordenó que la menor fuera puesta bajo la custodia del Departamento de la Familia.

Estando bajo la custodia del Departamento de la Familia, la menor se evadió del hogar sustituto en que fue ubicada. Esta situación provocó que la vista de ratificación de custodia fuera suspendida en varias ocasiones, hasta que pasados varios días, finalmente se localizó a la menor. Luego de ello, la vista de ratificación de custodia fue celebrada el 14 de junio de 2000 en el Tribunal de Primera Instancia. En esta vista las partes presentaron prueba, y declararon en la misma, la madre de la menor, la señora Longina García Gómez, funcionarios del Departamento de la Familia y la propia menor.

Luego de presentada la prueba, el Tribunal de Primera Instancia determinó que no existía evidencia: de

maltrato físico o emocional, de que la menor estuviera embarazada, y, en consecuencia, de que los padres hubiesen planificado trasladarla al estado de California para que se le practicara un aborto. El Tribunal de Primera Instancia dictó sentencia mediante la cual ordenó al Departamento de la Familia que entregara la menor a sus padres.

Con motivo de los hechos antes relatados, la Sra. Longina García Gómez y el Sr. Filibert Pacheco Cuttle, padres de la menor, presentaron ante el Tribunal de Primera Instancia, Sala Superior de Caguas, una demanda civil sobre daños y perjuicios contra el Estado Libre Asociado de Puerto Rico, el Departamento de la Familia, el Programa de Emergencia Social y la técnica de Emergencia Social, la Sra. Brenda Serrano.

En la demanda, los recurridos le imputaron negligencia a la Sra. Serrano por no haber corroborado la confidencia sobre el alegado maltrato y proceder, sin más, a remover a su hija menor de edad del hogar de sus padres. Además, alegaron que el Departamento de la Familia no ejerció la diligencia y responsabilidad requerida en la supervisión del hogar sustituto en que la menor se encontraba, lo que dio lugar a que ésta se evadiera del mismo. Se alegó por los demandantes que la remoción ilegal y el desconocimiento del paradero de su hija, al evadirse ésta del hogar donde fue ubicada, les causó una intensa angustia, tensión mental y miedo de que

su hija pudiese sufrir grave daño corporal y hasta la muerte, "dada la alta incidencia criminal que sacude el país." Fundamentaron su reclamación en los Artículos 1802 y 1803 del Código Civil de Puerto Rico, 31 L.P.R.A. secs. 5141, 5142.

Luego de varios incidentes procesales, ambas partes presentaron mociones para que se dictara sentencia sumaria. El Tribunal de Primera Instancia acogió la moción de la parte demandada como una de desestimación y procedió a desestimar, con perjuicio, la demanda fundamentando su decisión en que en nuestra jurisdicción, como regla general, no existe una acción en daños y perjuicios como consecuencia de un pleito civil. Reconoció dicho foro que, a modo de excepción, se reconoce una acción por daños y perjuicios por persecución maliciosa cuando los hechos del caso revelan circunstancias extremas en que se acosa al demandante con pleitos injustificados e instituidos maliciosamente. Concluyó que, como no hubo malicia de parte de los demandados, los demandantes carecían de una causa de acción por daños y perjuicios en su contra.

Inconformes con la sentencia, los demandantes presentaron el 29 de julio de 2002 un recurso de apelación ante el Tribunal de Apelaciones. En síntesis, alegaron que erró el Tribunal de Primera Instancia al desestimar la demanda, aplicando erróneamente jurisprudencia distinguible del caso de autos. Conforme a

ello, adujeron que el Tribunal de Primera Instancia erró al no reconocerle una causa de acción bajo las disposiciones estatutarias vigentes.

El Tribunal de Apelaciones dictó sentencia revocatoria, devolviendo el caso al foro de instancia para la continuación de los procedimientos. El foro apelativo intermedio resolvió que, aunque la Ley Núm. 342, *ante*, confería inmunidad contra cualquier reclamación civil o procedimiento criminal a favor de los funcionarios que promovieran una acción a su amparo, nada en la referida Ley disponía que no se pudiera reclamar del Estado Libre Asociado de Puerto Rico cuando dichos funcionarios actuaran negligentemente en el descargo de sus funciones oficiales. En consecuencia, determinó que los recurridos en este caso tienen una causa de acción por daños y perjuicios en contra del Estado Libre Asociado de Puerto Rico. Asimismo, resolvió que el Tribunal de Primera Instancia erró al aplicar al caso la jurisprudencia aludida en su sentencia para fundamentar la desestimación debido a que el procedimiento utilizado por el Departamento de la Familia era uno *sui generis* y no un pleito civil de conformidad con la Ley Núm. 342, *ante*, por lo que no aplicaba la doctrina de persecución maliciosa.

El Estado Libre Asociado acudió ante este Tribunal --vía recurso de *certiorari*-- alegando que el foro apelativo intermedio incidió al resolver que una acción

de remoción de menores bajo la Ley 342 de 16 de diciembre de 1999, según enmendada, no es un pleito civil y que resulta procedente una acción de daños y perjuicios como consecuencia de dicho pleito cuando se alega que los funcionarios del Estado Libre Asociado de Puerto Rico han actuado negligentemente. El peticionario señaló, además, que en este caso no procede la acción en daños y perjuicios bajo la Ley de Pleitos contra el Estado porque la Ley Núm. 342, ante, le concede inmunidad a los funcionarios que actúen de buena fe bajo la misma.

Expedimos el recurso solicitado. Contando con la comparecencia de ambas partes, y estando en posición de resolver el mismo, procedemos a así hacerlo.

I

El Artículo 1802 del Código Civil, 31 L.P.R.A. sec. 5141, dispone que:

> "El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. La imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización."

En reiteradas ocasiones hemos tenido oportunidad de interpretar la referida disposición estatutaria.[2] Sobre

---

[2] Baco v. ANR Const. Corp., res. el 23 de septiembre de 2004, 2004 T.S.P.R. 154; Valle Izquierdo v. E.L.A., res. el 14 de mayo de 2002, 2002 T.S.P.R. 64; Montalvo v. Cruz, 144 D.P.R. 748 (1998); J.A.D.M. v. Centro Com. Plaza Carolina, 132 D.P.R. 785 (1993); Elba A.B.M. v.

**(Continúa . . .)**

este tema, hemos sido enfáticos al indicar que para que exista responsabilidad bajo este precepto, es necesario: (i) que ocurra un daño; (ii) una acción u omisión culposa o negligente; (iii) la relación causal entre el daño y la conducta culposa o negligente. Toro Aponte v. E.L.A., 142 D.P.R. 464 (1997).

Del mismo modo, hemos indicado que el Art. 1802 "se enuncia en forma general y sin concretarse a determinados tipos de infracción, lo que presupone una norma genérica que prohíbe causar daño a otro mediante conducta, ya sea activa, ya pasiva." Sociedad de Gananciales v. González Padín, 117 D.P.R. 94, 105 (1986). El concepto de culpa recogido en el Art. 1802 es infinitamente abarcador, tanto como lo pueda ser la conducta humana. Pérez v. Criado Amunategui, res. el 19 de junio 2000, 2000 T.S.P.R. 92; Reyes v. Sucn. Sánchez Soto, 98 D.P.R. 305 (1970).

Por otro lado, la persecución maliciosa o uso injustificado de los procedimientos legales constituye la radicación maliciosa y sin causa de acción probable, de un proceso criminal o civil contra una persona, que produce daños a ésta. Herminio M. Brau del Toro, Los Daños y Perjuicios Extracontractuales en Puerto Rico, San Juan, Publicaciones J.T.S., 1986, pág. 109.

---

U.P.R.; 125 D.P.R. 294 (1990); Valle v. Amer. Inter. Ins. Co., 108 D.P.R. 692 (1979); Gierbolini v. Employers Fire Ins. Co., 104 D.P.R. 853 (1976).

Siendo la malicia un elemento esencial de la persecución maliciosa, en nuestro ordenamiento se le cataloga como una acción en daños y perjuicios causados por conducta torticera intencional bajo el Artículo 1802, ante, del Código Civil.

Hemos reiterado en numerosas ocasiones la doctrina general de que en nuestra jurisdicción no se reconoce la existencia de la acción en daños y perjuicios como consecuencia de un pleito civil. Véase, Giménez Álvarez v. Silén Maldonado, 131 D.P.R. 91 (1992); Commonwealth Loan Corp. v. García, 96 D.P.R. 773 (1968); Berríos v. International General Electric, 88 D.P.R. 109 (1963); Pereira v. Hernández, 83 D.P.R. 160 (1961). Hemos reconocido, sin embargo, que una persona puede presentar una acción en daños y perjuicios por persecución maliciosa "cuando los hechos del caso revelan circunstancias extremas en que se acosa al demandante con pleitos [civiles o criminales] injustificados e instituidos maliciosamente." Giménez Álvarez v. Silén Maldonado, *ante*. Para que pueda tener éxito una acción de esta naturaleza, hemos establecido que se tiene que cumplir con los siguientes requisitos:

1. Que una acción civil fue iniciada o un proceso criminal instituido por el demandado o a instar de éste.

2. Que la acción, o la causa, termina de modo favorable para el demandante.

3. Que fue instituida maliciosamente y sin que existiera causa probable

4. Que el demandante sufrió daños y perjuicios como consecuencia de ello. Fonseca v. Oyola, 77 D.P.R. 525, 528 (1954).

De otra parte, el Art. 1803, 31 L.P.R.A. sec. 5142, dispone que "la obligación que impone el Art. 1802 es exigible, no sólo por los actos u omisiones propios, sino que por los de aquellas personas de quienes se debe responder."[3] Para que exista esta obligación tiene que existir un nexo jurídico previo entre el causante del daño y el que viene obligado a repararlo. Sánchez v. E.L.A., 128 D.P.R. 497 (1991). De esa manera, la referida disposición estatutaria consagra la doctrina de responsabilidad vicaria. A esos efectos, el Artículo 1803, ante, responsabiliza al Estado, entre otros, "por los perjuicios causados por sus empleados en ocasión de sus funciones, siendo responsable, además, en ese concepto, en las mismas circunstancias y condiciones en que sería responsable un ciudadano particular." Valle Izquierdo v. E.L.A., res. el 14 de mayo de 2002, 2002 T.S.P.R. 64.

---

[3] Esta disposición estatutaria establece "una presunción legal de culpabilidad de las personas citadas en él, pues, en razón a las relaciones de autoridad o superioridad que mantienen con los autores del daño causado, la ley presume que le es imputable la causa del mismo por su propia culpa o negligencia, considerándoles como autores morales de dicho daño por no haber puesto de su parte el cuidado o la vigilancia necesaria para evitar que aquéllos dieran lugar a él." Cruz v. Rivera, 73 D.P.R. 682, 692 (1952) citando a 12 Manresa 664 (edición 1951).

La Ley Núm. 104 de 29 de junio de 1955, según enmendada, conocida como Ley de Pleitos contra el Estado, 32 L.P.R.A. sec. 3077 *et seq.*, constituye una autorización de parte del Estado a ser demandado en determinadas circunstancias. El Art. 2 de la citada Ley 104, 32 L.P.R.A. §3077, autoriza la presentación contra el Estado de acciones en daños y perjuicios a la persona o a la propiedad "causados por acción u omisión de cualquier funcionario, agente o empleado del Estado, o cualquier otra persona actuando con capacidad oficial y dentro del marco de su función, cargo o empleo interviniendo culpa o negligencia."

Al interpretar la antes mencionada Ley, hemos establecido que para que un demandante pueda prevalecer en una acción por daños y perjuicios contra el Estado, por las actuaciones u omisiones culposas o negligentes de un funcionario, debe establecer los siguientes elementos:

1. que la persona que le causó daño era agente, funcionario o empleado del Estado y que estaba actuando en su capacidad oficial al momento de causar el daño;

2. que el funcionario, agente o empleado actuó dentro del marco de su función;

3. que la actuación del empleado del Estado fue negligente y no intencional;

4. que existe una relación causal entre la conducta culposa y el daño producido. Leyva et al. V. Aristud et al., 132 D.P.R. 489, 510 (1993).

Debe recordarse que, al evaluar las disposiciones de la Ley 104, ante, tenemos que acudir a las normas

generales que sobre la culpa y negligencia hemos establecido en materia de la responsabilidad extracontractual bajo los Artículos 1802 y 1803, ante, del Código Civil. Valle Izquierdo v. E.L.A., ante.

A tono con lo anterior, hemos indicado en varias ocasiones que mediante la Ley 104 se puede demandar al Estado Libre Asociado y a un funcionario público cuando este último actúa negligentemente u omite actuar según su deber dentro del marco de sus funciones. De conformidad con ello, se puede presentar una demanda directamente en contra del empleado o, en la alternativa, en contra del Estado Libre Asociado, o en contra de ambos, aunque no puede haber acumulación de indemnizaciones. García v. E.L.A., 146 D.P.R. 725, 735 (1998); González Pérez v. E.L.A., 138 D.P.R. 399, 408 (1995); De Paz Lisk v. Aponte Roque, 124 D.P.R. 472, 493 (1989). En otras palabras, el demandante "puede tratar de recobrar tanto del Estado como del empleado, pero no de ambos, independientemente de la cantidad otorgada por el tribunal." González Pérez v. E.L.A., ante. De igual manera, la propia Ley 104, ante, dispone que: "la sentencia que se dicte en cualquier acción autorizada por las secs. 3077 et seq. de este título impedirá toda otra acción por parte del reclamante, por razón de la misma cuestión o materia, contra el funcionario, agente o empleado cuyo acto u omisión dio origen a la acción; y la sentencia contra el

funcionario, agente o empleado impedirá igualmente toda acción contra el Estado." 32 L.P.R.A. sec. 3083.

De particular relevancia al asunto ente nuestra consideración, es el hecho de que la Ley 104 no autoriza las acciones en daños y perjuicios en determinadas circunstancias. 32 L.P.R.A. sec. 3081. Entre esas, el Art. 6(b) excluye de su ámbito de aplicación los actos u omisiones de un funcionario público en el desempeño de una función de carácter discrecional.[4]

En atención a ello, en Piñero v. E.L.A., 102 D.P.R. 795 (1974), examinamos el alcance de la inmunidad del Estado Libre Asociado por los actos u omisiones de sus funcionarios públicos en el desempeño de una función de carácter discrecional. En específico, examinamos si la función de remover a un menor de edad era de carácter discrecional o no. Aunque en dicho caso resolvimos que la remoción de la custodia de un menor era de carácter discrecional, concluimos que como dicha función requería un ejercicio de discreción rutinaria, ésta no estaba protegida por la exclusión establecida en la Ley 104.

_____

[4] A esos efectos dispone el Art. 6 de la Ley 104, ante:

> Nada en las secs. 3077 et seq. de este título autoriza las acciones en daños y perjuicios contra el Estado por acto u omisión de un funcionario, agente o empleado:
> .   .   .   .   .   .   .   .   .   .
>         .
> (b) En el desempeño de una función de carácter discrecional, aun cuando hubiere abuso de discreción. 32 L.P.R.A. sec. 3081(b).

II

A la luz de lo antes expuesto, debemos determinar si de las alegaciones de la demanda surge una causa de acción en daños y perjuicios a favor de los recurridos en contra del Estado Libre Asociado bajo la Ley 104, ante.

Como ya vimos, el Tribunal de Primera Instancia desestimó la demanda por entender que en este caso no concurrían los elementos para una acción en daños y perjuicios por persecución maliciosa. El Tribunal de Apelaciones, por su parte, revocó dicha decisión, bajo el fundamento de que al Estado Libre Asociado no le cobija inmunidad alguna ni bajo la Ley 104 ni bajo la Ley 342, por lo que los aquí recurridos tienen una causa de acción en contra de éste. Asimismo, resolvió que como el procedimiento bajo la Ley Núm. 342 era uno *sui generis* y no un pleito civil, no era de aplicación la doctrina de persecución maliciosa.[5]

---

[5] Discrepamos del análisis realizado por el Tribunal de Primera Instancia y el Tribunal de Apelaciones sobre la doctrina de persecución maliciosa. La Ley Núm. 104 de 29 de junio de 1955, conocida como Ley de Pleitos contra el Estado, en su Artículo 6 dispone:

Nada en las secs. 3077 *et seq.* de este título autoriza las acciones en daños y perjuicios contra el Estado por acto u omisión de un funcionario, agente o empleado:
.    .    .    .    .    .    .    .    .    .    .
(d) constitutivo de acometimiento, agresión u otro delito contra la persona, encarcelación ilegal, arresto ilegal, persecución maliciosa, calumnia ... (énfasis suplido). 32 L.P.R.A. sec. 3081.

El Tribunal de Primera Instancia acogió la moción del demandado como una de desestimación procediendo a desestimar la demanda por alegadamente carecer el demandante de causa de acción. Conocido es que, cuando entendemos en una moción de desestimación, debemos dar por ciertas y buenas todas las alegaciones hechas en la demanda presentada. Roldán Rosario v. Lutron, S.M., Inc., 2000 T.S.P.R. 121; Unisys v. Ramallo Brothers, 128 D.P.R. 842, 858 (1991); Granados v. Rodríguez Estrada I, 124 D.P.R. 1 (1989); Ramos v. Marrero, 116 D.P.R. 357, 369 (1985); First Fed. Savs. v. Asoc. De Condómines, 114 D.P.R. 426 (1983). Asimismo, venimos obligados a considerar las alegaciones de la demanda de la manera más favorable a la parte demandante. Harguindey Ferrer v. U.I., 148 D.P.R. 13 (1999); Camacho v. Santos Cruz, 124 D.P.R. 396 (1989); Candal v. CT Radiology Office, Inc., 112 D.P.R. 227 (1982).

Surge de la demanda radicada en el presente caso, que los recurridos en este caso alegaron que sufrieron daños debido a la negligencia de la funcionaria del Departamento de la Familia al ésta no corroborar la alegada confidencia de maltrato. Además, los recurridos alegan que la funcionaria fue negligente al no ejercer, con diligencia y responsabilidad, el deber de supervisar al hogar sustituto en el cual la menor fue colocada, lo que ocasionó que ésta se evadiera del mismo. Como podemos notar, de las alegaciones de la demanda no surge una

reclamación en acción en daños y perjuicios por persecución maliciosa sino más bien surge una reclamación por conducta negligente de parte de un funcionario público.

El Estado argumenta que los demandantes recurridos no tienen causa de acción en contra suya ya que en nuestra jurisdicción no se reconoce un pleito de daños y perjuicios como consecuencia del procedimiento de remoción de custodia. Resulta sorprendente que el peticionario insista en este argumento. En el caso de Alberio Quiñónez v. E.L.A., 90 D.P.R. 812, 815-816 (1964), citando con aprobación el caso de Meléndez v. E.L.A., 81 D.P.R. 824 (1960), expresamos en cuanto a la Ley 104 lo siguiente:

> ..."A nuestro juicio no fue la intención de la Legislatura, al aprobar el indicado inciso (d) mantener la inmunidad del Estado contra reclamaciones de los daños ocasionados por los actos descuidados y negligentes de sus funcionarios, agentes o empleados. M[á]s bien lo que quiso hacer fue conservar la inmunidad del Estado contra litigios originados por aquellos actos torticeros cometidos deliberada o intencionalmente por sus funcionarios, agentes o empleados."

> Es, casualmente, en el descubrimiento de esta intencionalidad, esta conducta subrepticia, so color de autoridad, en que debe inspirarse el refinamiento judicial... No creemos que en el estado actual de nuestra Ley y nuestra jurisprudencia se pueda hacer una válida distinción entre la responsabilidad de una persona particular y el Estado cuando se trata de un daño causado por negligencia: Montes v. Fondo del Seguro del Estado, 87 D.P.R. 199, (1963) cita precisa a la pág. 208.

Debe mantenerse presente que la posición de la parte recurrida, conforme a las alegaciones de la demanda, es a los efectos de que la conducta o actuación deficiente o negligente del funcionario de Departamento de la Familia --consistente en no corroborar la confidencia brindada y/o no supervisar adecuada y responsablemente a la menor-- fue la causa de los daños sufridos por razón de ellos haber sido privados de la custodia de su hija menor por unos motivos que no eran ciertos.

Interpretando las alegaciones de la demanda de la manera más favorable a la parte demandante, y conforme a nuestra decisión en el caso de Piñero v. E.L.A., ante, concluimos que, los recurridos tienen una causa de acción en daños y perjuicios bajo la Ley 104 en contra del Estado Libre Asociado por las acciones u omisiones de un funcionario del Departamento de la Familia en la remoción de la custodia de un menor si éstos pueden demostrar que medió negligencia al no haberse corroborado la confidencia que le fue ofrecida y no supervisar adecuadamente a la menor en el hogar sustituto en que ésta fue ubicada. [6]

---

[6] En el caso de Romero Arroyo v. E.L.A., 127 D.P.R. 724 (1991) nos enfrentamos a una controversia un tanto parecida. En este caso, luego de recibir una confidencia, un fiscal obtuvo una orden de arresto en contra de los demandantes. Luego en la vista preliminar se determinó la inexistencia de causa probable para acusar. Los demandantes presentaron una acción sobre daños y perjuicios en contra del Estado Libre Asociado por una alegada negligencia de parte de un fiscal al no

**(Continúa . . .)**

No obstante lo anterior, queremos dejar meridianamente claro que no estamos pasando juicio, en estos momentos, sobre la alegación de que la actuación del funcionario del Departamento de la Familia fue negligente al no corroborar la información que le fue suministrada ni ser diligente y responsable en la supervisión del hogar sustituto en el cual se encontraba la menor. Esta determinación le compete al Tribunal de Primera Instancia, luego de celebrar un juicio plenario.[7]

III

Examinamos, por último, las disposiciones de la Ley 342, ante --vigente al ocurrir los hechos del presente caso-- con el propósito de evaluar cuál es el alcance de la inmunidad estatuida para los funcionarios públicos en dicha Ley y de qué manera, si alguna, ésta afectó la

_____

corroborar una confidencia que le fue hecha y que implicaba a los demandantes en la comisión de un delito. En este caso reconocimos que los demandantes tenían una causa de acción en daños y perjuicios si podían probar que el funcionario público fue negligente en el desempeño de sus deberes oficiales al no corroborar la información que le fue ofrecida.

[7] Es de rigor señalar que al momento de adjudicar si hubo negligencia o no, se tendrá que tomar en cuenta la naturaleza de las responsabilidades que le impone la Ley Núm. 342 a los funcionarios públicos para ver si de acuerdo a las circunstancias de este caso, el funcionario del Departamento de la Familia actuó con el debido cuidado que una persona prudente y razonable hubiera ejercido en las mismas circunstancias. Toro Aponte v. E.L.A., 142 D.P.R. 464 (1997).

inmunidad del Estado, recordando que, conforme se expresa en el Escolio 1, la referida Ley 342 fue derogada.

La Ley 342, ante, fue aprobada con el propósito de proteger la salud y el bienestar de los menores víctimas de maltrato o de cuidados negligentes por parte de las personas que ejercen la custodia sobre ellos. En la exposición de motivos de la Ley se expresó lo siguiente:

> Nuestro Gobierno reconoce que el rol de la familia es de suma importancia en nuestra sociedad y que los menores alcanzan su mayor potencial de desarrollo en el núcleo familiar. Sin embargo, cuando el padre y/o la madre no pueden satisfacer las necesidades de estos menores y protegerlos adecuadamente, el Estado tiene la responsabilidad de intervenir para proteger su salud y bienestar.

La Ley 342 le imponía a determinadas personas la obligación de informar y tomar acción en casos en que tuvieran conocimiento o sospecha que un menor está siendo víctima de maltrato. En el Art. 8 de la Ley, 8 L.P.R.A. sec. 441e, se disponía:

> Cualquier policía estatal o municipal, técnico o trabajador social especializado designado por el Departamento, director escolar, maestro, trabajador social escolar, cualquier médico, funcionario de la Defensa Civil u otro profesional de la salud que tenga a un menor bajo tratamiento, ejercerá custodia de emergencia sin el consentimiento del padre, madre o de la persona responsable del bienestar del menor que lo tenga bajo su cuidado temporero o permanente, cuando concurran las siguientes circunstancias:
>
> (a) Tuviere conocimiento o sospecha de que existe un riesgo para la seguridad , salud e integridad física, mental, emocional y/o moral del menor.

(b)   El padre, la madre o persona responsable por el bienestar del menor no están accesibles o no consientan a que se les remueva el menor.

La persona a cargo de un hospital o de una institución médica similar ejercerá la custodia de emergencia de un menor cuando tenga conocimiento o sospecha de que éste ha sido víctima de maltrato, maltrato institucional, maltrato por negligencia y/o maltrato por negligencia institucional; cuando entienda que los hechos así lo justifican, aunque no se requiera tratamiento médico adicional y aún cuando el padre, madre o las personas responsables por el bienestar del menor soliciten que se les entregue.

Como mecanismo de protección a estas personas a las que les imponía la responsabilidad de informar, la Ley 342 disponía en su Artículo 11, 8 L.P.R.A. §441h, lo siguiente:

Cualquier persona, funcionario o institución de las obligadas a suministrar información sobre situaciones de maltrato, maltrato institucional, maltrato por negligencia y/o negligencia por negligencia institucional hacia menores, y toda persona que voluntariamente y de buena fe participe en cualquier acto de los requeridos o dispuestos en este capítulo, tendrá inmunidad contra cualquier acción civil o criminal que pudiera ser promovida a consecuencia de dicho acto.[8] (énfasis suplido).

_____

[8] Cabe destacar el hecho que la Ley Núm. 177 del 1 de agosto de 2003 que derogó la Ley Núm. 342, *ante*, cambió el esquema de la inmunidad ofrecida. Ahora el Art. 21 de la Ley 177 dispone lo siguiente:

La información ofrecida de buena fe por cualquier persona, funcionario o institución de las obligadas a suministrar información sobre situaciones de maltrato, maltrato institucional, negligencia y/o negligencia institucional hacia menores, según dispuesto en este capítulo, no podrá ser utilizada en su contra en ninguna acción civil o criminal que pudiera ser

(Continúa . . .)

De conformidad con la referida disposición estatutaria, la inmunidad que se le <u>concedía</u> en aquel momento a los funcionarios públicos era en su capacidad personal y condicionada a que hubiesen actuado voluntariamente y de buena fe.

Como vemos, la Asamblea Legislativa le concedió esta inmunidad a los funcionarios por consideraciones de política pública ya que el propósito de esta disposición era, precisamente proteger a las personas obligadas por la Ley 342 a actuar de determinada manera en casos en que algún menor fuera víctima de maltrato.[9] <u>Resulta importante señalar que ninguna disposición de la Ley Núm. 342 hacía</u>

_____

promovida a consecuencia de dicho acto. 8 L.P.R.A. sec. 446.

[9] Son importantes los comentarios que hizo el Representante Angel Cintrón cuando se estaba discutiendo la Ley 342 en el hemiciclo:

"Este Artículo, el Artículo 11, esta ley habla de inmunidad y dispone lo siguiente, y esto es uno de los asuntos más importantes, señor Presidente, y es, que así como le hemos fijado una responsabilidad a las personas de estar notificando sobre maltrato, también hemos establecido que esas personas gozarán de una inmunidad. Y en el Artículo 11, dice que "Toda persona que voluntariamente y de buena fe"... eso es lo importante aquí, para gozar de este Artículo la persona tiene que probar <u>que actuó voluntariamente y de buena fe</u>, que ha actuado de buena fe y voluntariamente para brindar esa información y le puede cobijar la inmunidad tanto civil como criminal. No se va a procesar a esta persona. P.de la C. 2830, Diario de Sesiones, 8 de noviembre de 1999, p. 4.

referencia alguna a inmunidad por parte del Estado Libre Asociado.

Este Tribunal ha establecido que cuando se le reconoce inmunidad a un funcionario público en el desempeño de sus deberes oficiales por la responsabilidad civil que pueda generar su conducta, la misma es separada y distinta de la del Estado. Véase: Romero Arroyo v. E.L.A., 127 D.P.R. 724, 744 (1991). La razón es que la inmunidad del funcionario público y la del Estado tienen orígenes distintos. La inmunidad del Estado se deriva de la doctrina de la inmunidad del soberano mientras que la de los funcionarios públicos se funda en consideraciones de política pública. La inmunidad que ampara a los funcionarios públicos "opera como una limitación sustantiva de la responsabilidad personal por daños en que puedan incurrir dichos funcionarios en el descargo de sus deberes y responsabilidades oficiales." Mientras que la inmunidad que ampara al Estado "opera como una limitación de responsabilidad civil respecto a la entidad gubernamental como cuerpo político." *Ibíd*. Vemos, pues, que la inmunidad que ampara a un funcionario público no es una extensión ni es parte de la inmunidad del Estado.

De conformidad con ello, cuando se le concede inmunidad a un funcionario público, el efecto es que sólo se puede demandar al Estado por la responsabilidad de éste, condicionado a las disposiciones de la Ley Núm.

104, ante. A esos efectos, en <u>Vázquez Negrón</u> v. <u>E.L.A.</u>, 113 D.P.R. 148, 151 (1982), resolvimos que:

> En estas circunstancias el Gobierno ha asumido toda la responsabilidad que generen los actos culposos o negligentes de estos empleados, librándolos de este modo de todas las vicisitudes que supone una reclamación civil por daños en su contra y ha dispuesto como remedio exclusivo del perjudicado la acción en daños contra el Estado.[10]

En estos casos el único remedio que tiene el perjudicado es la acción en daños y perjuicios en contra del Estado dado el hecho de que cuando se le concede inmunidad a un funcionario público hay una inexistencia de causa de acción en contra de éste. <u>Lind</u> v. <u>E.L.A.</u>, 112 D.P.R. 67 (1982).

<u>En virtud de lo antes expuesto, concluimos que la inmunidad que concedía la Ley 342 a los funcionarios públicos que actuaban al amparo de ésta, era en su capacidad personal, no extendiéndose la misma al Estado.</u> Como en este caso a la funcionaria del Departamento de la Familia le cobija una inmunidad al amparo de la Ley 342, la única alternativa que le quedaba, o queda, a los demandantes recurridos es reclamarle al Estado Libre

---

[10] En este caso se interpretó el efecto que tenía la inmunidad que le concedía la Ley de Responsabilidad Profesional Médico-Hospitalaria, 26 L.P.R.A. sec. 4105, a los profesionales de la salud que fueran empleados del Estado sobre el esquema de responsabilidad del Estado y del empleado público, estatuido en la Ley de Pleitos contra el Estado.

Asociado por los daños y perjuicios causados por la conducta negligente de ésta.

IV

En mérito de lo antes expuesto, procede confirmar la sentencia emitida por el Tribunal de Apelaciones, y devolver el caso al Tribunal de Primera Instancia, Sala Superior de Caguas, para procedimientos ulteriores consistentes con lo aquí resuelto.

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Longina García Gómez y
Filibert Pacheco Tuttle

    Recurridos

       vs.                      CC-2002-915     CERTIORARI

Estado Libre Asociado de
Puerto Rico y otros

    Peticionario

SENTENCIA

En San Juan, Puerto Rico, a 24 de febrero de 2005

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia confirmatoria de la emitida en el presente caso por el Tribunal de Apelaciones y se devuelve el mismo al Tribunal de Primera Instancia, Sala Superior de Caguas, para procedimientos ulteriores consistentes con lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri emitió Opinión disidente a la cual se une la Juez Asociada señora Rodríguez Rodríguez.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Longina García Gómez y
Filibert Pacheco Tuttle

    Demandantes-Recurridos


        vs.                    CC-2002-915      Certiorari


Estado Libre Asociado de
Puerto Rico y Otros

    Demandados-Peticionarios


Opinión Disidente emitida por el Juez Asociado SEÑOR FUSTER BERLINGERI a la cual se unió la Juez Asociada SEÑORA RODRÍGUEZ RODRIGUEZ.


San Juan, Puerto Rico, a 24 de febrero de 2005.


En el caso de autos, la mayoría del Tribunal le reconoce una causa de acción en daños y perjuicios a los padres de una menor contra el Estado Libre Asociado. Ello porque un funcionario del Departamento de la Familia procedió a remover a la menor del hogar de los padres luego de recibir una confidencia de que los padres **maltrataban gravemente** a la menor, quien estaba embarazada e iba a ser obligada por éstos a someterse a un aborto. La justificación de la mayoría para la referida causa de acción es que el funcionario aludido actuó **sin corroborar antes** que en efecto hubiese ocurrido el maltrato denunciado mediante la confidencia.

Debo disentir del dictamen referido porque la mayoría del Tribunal ignora varios elementos esenciales al emitirlo. Veamos.

Nótese, en primer lugar, que la aludida remoción de la menor ocurrió **mediante orden judicial**. No se trata de una mera acción del funcionario estatal sino de una medida tomada por éste con el aval de un tribunal.

En segundo lugar, el funcionario estatal en cuestión actuó **al amparo de una ley**, que le requería a tales funcionarios tomar medidas urgentes cuando tenían conocimiento **o sospechas** de que un menor **estaba en riesgo de ser maltratado**.[11] El funcionario, pues, no actuó por mero capricho sino en fiel cumplimiento de un claro deber legal.

En tercer lugar, en este caso la confidencia sobre un supuesto maltrato creó una **situación de emergencia** que exigía que se le diera **prioridad a la protección del menor**. El bienestar de éste se hubiese puesto en **grave peligro** si el funcionario estatal hubiese dedicado sus primeros esfuerzos a corroborar si en efecto la menor estaba siendo maltratada o no, en lugar de proceder a procurar de inmediato la protección de la menor. Enfrentado el funcionario estatal correspondiente con una confidencia creíble de grave maltrato de un menor, este tenía que moverse **antes de todo** a proteger al menor, como se hizo aquí. No podía el funcionario estatal esperar a verificar si

---

[11] Véanse los artículos 4, 8 y 35 de la anterior <u>Ley para el Amparo de Menores en el Siglo XXI</u>, Ley Núm. 342 de 10 de diciembre de 1999, que estaba vigente cuando ocurrieron los hechos del caso de autos.

existía el maltrato denunciado porque ello hubiese significado el grave riesgo de exponer al menor a aun mayores daños.

Las tres circunstancias enumeradas en los párrafos anteriores evidencian claramente que las medidas tomadas por el funcionario estatal para la referida remoción de la menor del caso de autos **no podían implicar negligencia alguna**. La mayoría del Tribunal ni las menciona en su inusitada e irreflexiva determinación de que por dicha remoción puede incoarse aquí una acción de daños y perjuicios contra el Estado Libre Asociado de Puerto Rico. No puede demandarse al Estado porque un funcionario suyo actúe conforme a un claro deber legal y siguiendo precisamente el procedimiento que dispone el propio ordenamiento jurídico para tal situación, sobre todo cuando la propia ley que rige al funcionario en cuestión le concede total **inmunidad** con respecto a la conducta desplegada por éste en cumplimiento de lo ordenado por ley. Resolver que aun en estas circunstancias puede proceder una acción de daños y perjuicios contra el propio Estado es un yerro carente de toda lógica jurídica.

La postura referida de la mayoría del Tribunal en el caso de autos es **incompatible** con el claro esquema de la reciente **Ley para el Bienestar y la Protección Integral de la Niñez**, Ley Núm. 177 del 1 de agosto de 2003, 8 L.P.R.A. sec. 444 *et seq,* que es la que rige el asunto ante nos actualmente. Dicha Ley, como la ley anterior que sustituyó, establece varias medidas **singulares** para proteger a los

menores cuando existe la **sospecha** de que está en riesgo su integridad física, emocional o moral, tales como: (a) la **custodia de emergencia**, mediante la cual se le ordena a toda una serie de funcionarios estatales a ejercer una custodia de emergencia en determinadas situaciones, sin tener que obtener autorización judicial para ello, y sin el consentimiento de los padres del menor, 8 L.P.R.A. sec. 446b; (b) **entrevista exclusiva al menor**, sin orden judicial y sin la notificación previa a los padres o encargados de éste; 8 L.P.R.A. sec. 446c; (c) **sanciones penales**, configurándose como delito menos grave el que una persona sospeche que un menor es víctima de maltrato y no lo informe a las autoridades correspondientes, 8 L.P.R.A. secs. 446 y 450a.

De particular interés, en lo que aquí nos concierne, son las disposiciones de la referida Ley, similares a las de la ley anterior, relativas al **procedimiento judicial**. En esencia, se establece una jurisdicción **para casos de emergencia** mediante la cual, **a solicitud de funcionarios del Departamento de la Familia**, cualquier juez de Primera Instancia puede tomar cualquier determinación que considere más adecuada para el mejor interés del menor, **aun sin que se haya notificado a los padres o encargados del menor** y aunque la orden del juez sea para **privar provisionalmente** a los padres o encargados del menor de la **custodia que ejercen sobre éste**. La propia Ley establece que en tales casos, el tribunal celebrará **procedimientos posteriores para la**

**ratificación de la custodia** y para la consideración ordinaria de todo lo relacionado con ésta. 8 L.P.R.A. secs. 447f y 447k.

La Ley vigente ahora, como la anterior, pues **provee precisamente para lo ocurrido en el caso de autos**, cuando inicialmente un juez ordenó la remoción de la menor del hogar de los padres provisionalmente, pero en el procedimiento judicial posterior de ratificación de custodia, ésta se le devolvió a sus padres. Lo acontecido aquí respondió exactamente a lo previsto en Ley, por lo que es sencillamente incomprensible que la mayoría del Tribunal disponga enrevesadamente que por haber actuado el funcionario estatal en cuestión precisamente conforme a la ley, el Estado puede estar sujeto a responder en daños y perjuicios.

La errada decisión de la mayoría le impone, además, una enorme dificultad al Departamento de la Familia en situaciones como las del caso de autos, que sólo puede entorpecer innecesariamente las arduas labores que éste tiene encomendadas. Y así este Foro, en lugar de ayudar a solventar los graves males sociales que afligen al país, se convierte en parte de los problemas, por sus insólitas y desgraciadas decisiones.

Por todo ello, yo disiento.


                                        JAIME B. FUSTER BERLINGERI
                                             **JUEZ ASOCIADO**