Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| T-BOARDS, LLC<br><br>Demandante-Apelante<br><br>v.<br><br>DEPARTAMENTO DE RECREACIÓN Y DEPORTES DE PUERTO RICO<br><br>Demandado-Apelado | KLAN202400098 | Apelación procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Civil núm.: SJ2022CV08446 (803)<br><br>Sobre: Incumplimiento de Contrato, Cumplimiento Específico, Daños y Perjuicios |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Marrero Guerrero y la Jueza Boria Vizcarrondo.

Sánchez Ramos, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 13 de marzo de 2024.

El Tribunal de Primera Instancia ("TPI") desestimó, por las alegaciones, una demanda contra el Departamento de Recreación y Deportes de Puerto Rico (el "Departamento") relacionada con la colocación de una valla publicitaria en terrenos del Departamento. Según se explica a continuación, concluimos que procede confirmar lo actuado por el TPI, pues, ante las defensas del Departamento, la parte demandante no negó su falta de diligencia en cuanto a la obtención de permisos para la valla e, incluso, dicha parte ha planteado que los referidos permisos no serían jurídicamente procedentes.

I.

En septiembre de 2022, T-Boards, Inc. ("TBI"), presentó la acción de referencia (la "Demanda") en contra del Departamento. Alegó que, en octubre de 2016, suscribió un contrato de arrendamiento con el Departamento (el "Contrato"), con el fin de

edificar, operar y mantener una valla publicitaria en un terreno del Departamento en el Parque Teófilo Cruz (el "Terreno").

TBI alegó que el Departamento incumplió con el Contrato cuando, el 29 de junio de 2021, suscribió un contrato de arrendamiento con un tercero ("NexGen") con el fin de permitirle construir y operar, en el Terreno, un "anuncio publicitario digital de significativo tamaño". Planteó que, al así actuar, el Departamento infringió el Contrato, el cual le concedía exclusividad a TBI en cuanto a vallas publicitarias en el Terreno. TBI alegó que lo actuado por el Departamento le provocó daños estimados en una cantidad no menor de $4,000,000.00.

En diciembre de 2022, el Departamento presentó una Moción de Desestimación (la "Moción"). En lo pertinente, sostuvo que TBI no "cumplió con ninguna" de las cláusulas del Contrato y que había abandonado su interés en obtener los permisos para construir la valla publicitaria. En particular, alegó que TBI, luego de cinco años de suscrito el Contrato, no había obtenido los permisos ni cumplido con su obligación contractual de informar periódicamente al Departamento en torno al *status* de los mismos. Sostuvo que TBI no había "sido diligente en la gestión de los permisos".

TBI se opuso a la Moción; no obstante, no rebatió lo alegado por el Departamento en cuanto a la obtención de permisos por TBI o en cuanto a la ausencia de informes al Departamento al respecto.

Mientras tanto, en junio de 2023, TBI informó al TPI de una Sentencia dictada por otro panel de este Tribunal (la "Sentencia"), mediante la cual determinamos, a petición precisamente de TBI, que eran inválidos los permisos otorgados a NexGen para operar los anuncios digitales en el Terreno. En efecto, mediante la Sentencia (KLRA202200365, Sentencia de 12 de mayo de 2023), concluimos que no procedía el permiso allí impugnado, relacionado con una valla publicitaria en el Terreno, por virtud de la reglamentación

federal aplicable las vías que forman parte del *National Highway System*, razón por la cual la Autoridad de Carreteras y Transportación ("ACT") se opuso a la instalación de las referidas vallas.

Mediante una Sentencia notificada el 3 de enero de 2024, el TPI desestimó la Demanda. Razonó que TBI no podía reclamar al Departamento por su incumplimiento con el Contrato porque TBI también había incumplido con el mismo, ello al omitir notificar con regularidad al Departamento sobre el estado de las gestiones para obtener los permisos. El TPI también concluyó que TBI no obtuvo ciertas pólizas de seguro exigidas por el Contrato.

El 2 de febrero, TBI presentó la apelación de referencia; formula los siguientes señalamientos de error:

1. Erró el Tribunal de Primera Instancia al tomar como ciertos hechos alegados por la parte demandada-apelada en mociones y en una vista argumentativa, incluso cuando la adjudicación ante sí era una bajo el palio de la Regla 10.2 de Procedimiento Civil; y aunque no se aportó prueba alguna que sostenga la veracidad de las alegaciones de la apelada y por tal las determinaciones de hecho esbozadas en las que se fundamenta la Sentencia.

2. Erró el Tribunal de Primera Instancia al desestimar la acción de la parte apelante sin el beneficio de una vista evidenciaria ni una oposición a solicitud de sentencia sumaria, como exigen las Reglas de Procedimiento Civil.

3. Erró el Tribunal de Primera Instancia al desestimar la Demanda de la parte apelante a pesar de que dicha desestimación se fundamentó en obligaciones accesorias.

El Departamento presentó su alegato en oposición. Expuso que, cinco años luego de formalizado el Contrato, TBI nunca había presentado al Departamento "informes sobre el status de las solicitudes de los permisos ... (ni tan siquiera ha alegado lo contrario...); y tampoco ha alegado haber realizado esfuerzos de buena fe que sean suficientes para lograr el cumplimiento de sus

prestaciones, esto[] es, gestionar y obtener los permisos". Resolvemos.

## II.

La desestimación resuelve un pleito de forma desfavorable para el demandante sin celebrar un juicio en su fondo o en los méritos. *S.L.G. Sierra v. Rodríguez*, 163 DPR 738, 745 (2005). De este modo, la Regla 10.2 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, dispone varios supuestos en los cuales una parte demandada puede solicitar la desestimación de una acción en su contra antes de presentar la contestación a la demanda. *Aut. Tierras v. Moren & Ruiz Dev. Corp.*, 174 DPR 409, 428 (2008). En lo pertinente, la Regla 10.2 (5) de las de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2 (5), establece que:

> Toda defensa de hechos o de derecho contra una reclamación en cualquier alegación... se expondrá en la alegación respondiente que se haga a las mismas, en caso de que se requiera dicha alegación respondiente, excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante moción debidamente fundamentada:
> ...
> (5) dejar de exponer una reclamación que justifique la concesión de un remedio.
> 32 LPRA Ap. V, R. 10.2 (5).

A los fines de disponer de una moción de desestimación, el tribunal está obligado a dar por ciertas y buenas las alegaciones fácticas de la demanda que hayan sido aseveradas claramente. *Torres Torres v. Torres Serrano*, 179 DPR 481, 501 (2010); *Perfect Cleaning Service, Inc. v. Centro Cardiovascular*, 172 DPR 139, 149 (2007); *Colón Muñoz v. Lotería de Puerto Rico*, 167 DPR 625, 649 (2006); *García v. E.L.A.*, 163 DPR 800, 814 (2005); *Harguindey Ferrer v. Universidad Interamericana*, 148 DPR 13, 30 (1999); *Ramos v. Marrero*, 116 DPR 357, 369 (1985). Esto obedece a que el demandante no viene obligado a realizar alegaciones minuciosas y técnicamente perfectas, sino que se le permite limitarse a bosquejar

a grandes rasgos su reclamación, mediante una exposición sucinta y sencilla de los hechos. *Torres Torres,* 179 DPR a la pág. 501; *Sánchez v. Aut. de Los Puertos,* 153 DPR 559, 569 (2001); *Dorante v. Wrangler de P.R.,* 145 DPR 408, 413 (1998).

Ahora bien, una moción de desestimación, al amparo de la Regla 10.2(5), procederá si, a la luz de la situación más favorable al demandante y resolviendo toda duda a su favor, la demanda es insuficiente para constituir una reclamación válida. *El Día, Inc. v. Mun. de Guaynabo,* 187 DPR 811, 821 (2013); *Consejo Titulares v. Gómez Estremera, et al.,* 184 DPR 407, 423 (2012); *Colón v. San Patricio Corp.,* 81 DPR 242, 266 (1959). En otras palabras, el promovente de la moción de desestimación tiene que demostrar que, presumiendo que lo allí expuesto es cierto, la demanda no expone una reclamación que justifique la concesión de un remedio. *Rosario v. Toyota,* 166 DPR 1, 7 (2005); *Pressure Vessels v. Empire Gas,* 137 DPR 497, 505 (1994).

Además, ante una moción de desestimación, hay que interpretar las alegaciones de la demanda conjunta, liberalmente y de la manera más favorable posible para la parte demandante. *Rosario,* 166 DPR a la pág. 8; *Dorante,* 145 DPR a la pág. 414. Así pues, la demanda no se desestimará a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que pueda ser probado en apoyo a su reclamación. *Rosario,* 166 DPR a la pág. 8; *Pressure Vessels,* 137 DPR a la pág. 505.

III.

Las obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos o en que intervenga culpa o negligencia. Art. 1042 del Código Civil, 31 LPRA

sec. 2992.[1] Las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes y deben cumplirse a tenor con los mismos. Art. 1044 del Código Civil, 31 LPRA sec. 2994. Los contratos existen desde que una o varias personas consienten en obligarse con otro a dar alguna cosa o prestar algún servicio. Art. 1206 del Código Civil, 31 LPRA sec. 3371; *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 886 (2008).

Una obligación contractual se configura cuando concurren los siguientes requisitos: (1) consentimiento de los contratantes; (2) objeto cierto que sea materia del contrato; y (3) causa de la obligación. Art. 1213 del Código Civil, 31 LPRA sec. 3391. Al concurrir lo anterior, se perfecciona el contrato y, desde entonces, dicho contrato obliga al cumplimiento de lo expresamente pactado y a todas las consecuencias que según su naturaleza sean conformes a la buena fe, el uso y la ley. Art. 1210 del Código Civil, 31 LPRA sec. 3375.

Ahora bien, a tenor con el principio imperante de libertad de contratación, los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público. Art. 1207 del Código Civil, 31 LPRA sec. 3372; *Coop. Sabaneña v. Casiano Rivera*, 184 DPR 169, 173 (2011); *Guadalupe Solís v. González Durieux*, 172 DPR 676, 683 (2007); *Álvarez v. Rivera*, 165 DPR 1, 17 (2005). Sin embargo, dicha autonomía se limita en tanto no se deja al arbitrio de uno de los contratantes la validez y el cumplimiento de los contratos. Art. 1208 del Código Civil, 31 LPRA sec. 3373.

Por otro lado, en el caso de las obligaciones recíprocas, si una de las partes entiende que el otro contratante incurrió en

---

[1] Haremos referencia al Código Civil vigente a la fecha de los hechos del caso.

incumplimiento de contrato, el primero puede acudir al foro competente en búsqueda de un remedio conforme al Art. 1077 del Código Civil y exigir el cumplimiento específico o la resolución del contrato, pudiendo en ambos casos exigir el resarcimiento en daños y el abono de intereses. 31 LPRA sec. 3052.

IV.

Concluimos que actuó correctamente el TPI al desestimar la Demanda.

Como cuestión de umbral, resaltamos que, en el trámite que culminó en la Sentencia, referente precisamente a la valla colocada por NexGen a raíz de la actuación impugnada ahora en la Demanda, TBI planteó que "no es posible autorizar la construcción de un anuncio digital en una salida de una autopista perteneciente al *National Highway System* hacia una marginal de dos carriles". Véase Recurso de Revisión Judicial presentado por TBI, KLRA202200365, pág. 23.

A la luz de lo anterior, y de lo alegado por el Departamento en cuanto a la falta de diligencia de TBI en lo relacionado con la obtención de los permisos contemplados por el Contrato, y en cuanto al incumplimiento de TBI con su obligación de informar periódicamente al Departamento al respecto[2], resulta determinante que TBI ni siquiera haya alegado, ni ante el TPI ni ante este Tribunal, que haya intentado obtener los referidos permisos.

---

[2] En lo pertinente, la Cláusula Quinta del Contrato dispone que:
[TBI] comenzará a pagar el canon de arrendamiento establecido, una vez obtenido todos los permisos, licencias y documentos para operar la pantalla. La fecha de inicio del pago de arrendamiento será dentro de los treinta (30) días de haber obtenido el último permiso necesario para operar la pantalla. [T-Boards] reconoce que independientemente del tiempo que demore la obtención de los permisos, el término de vigencia del contrato es desde su firma, no pudiendo descontar para efectos del cómputo de los veinte (20) años, el tiempo que haya demorado en conseguir dichos permisos. A su vez, [**T-Boards] será responsable de mantener informado a EL DEPARTAMENTO, cada sesenta (60) días, sobre el "status" de las solicitudes presentadas para obtener los permisos** de operación de la pantalla. Esta información deberá ser provista a la Oficina de Asesoramiento Legal.

Adviértase que surge del Contrato que TBI se obligó a gestionar los permisos de operación para la valla publicitaria y acordó informar al Departamento cada 60 días sobre las gestiones realizadas para obtener los permisos. A pesar de lo alegado por el Departamento, TBI no ha negado que no ha conseguido los permisos ni cumplido con mantener informado periódicamente al Departamento de sus gestiones al respecto. De hecho, el propio TBI nos planteó, en el recurso que culminó en la Sentencia, que no sería posible obtener dichos permisos.

En fin, como TBI no ha negado su incumplimiento con las cláusulas del Contrato relacionadas con la obtención de permisos para la valla publicitaria y, más aún, ha planteado formalmente que la ubicación de una valla en el Terreno, según contemplada en el Contrato, no sería posible por virtud de la reglamentación federal aplicable, el TPI actuó correctamente al determinar que TBI no podía reclamar al Departamento por su incumplimiento con el Contrato, por lo cual procedía la desestimación de la Demanda.

V.

Por los fundamentos expuestos, se confirma la Sentencia apelada.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones