ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| **MARCIAL BATISTA FIGUEROA**<br><br>Apelado<br><br>v.<br><br>**MUNICIPIO AUTÓNOMO DE MANATÍ; AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADOS; COMPAÑÍA DE SEGUROS A, B, C**<br><br>Apelante | KLAN202400133 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de **Arecibo**<br><br>Civil Núm.: **MT2021CV00416**<br><br>Sobre: Daños y Perjuicios (Caída) |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores.

Cintrón Cintrón, Jueza Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de junio de 2024.

Comparece ante nos, la Autoridad de Acueductos y Alcantarillados (en adelante, AAA o parte apelante) y solicita la revisión de la *Sentencia Enmendada* dictada por el Tribunal de Primera Instancia, Sala Superior de Manatí (en adelante, TPI) el 12 de enero de 2024.[1] Mediante dicho dictamen, el TPI declaró *Ha Lugar* la *Demanda* de daños y perjuicios presentada por el señor Marcial Batista Figueroa (en adelante, señor Batista Figueroa o apelado).

Por los fundamentos que expondremos a continuación, se modifica la *Sentencia Enmendada*.

**I.**

Según surge del expediente, el 16 de julio de 2021, el señor Batista Figueroa incoó una demanda sobre daños y perjuicios en contra de la AAA, el Municipio Autónomo de Manatí (en adelante, Municipio) y la Compañía de Seguros A, B, C. En esta, arguyó que,

---

[1] Notificada el 16 de enero de 2024.

el 9 de julio 2021, sufrió un accidente en la Carretera 670, intersección con la calle Eugenio Sánchez López, en el pueblo de Manatí. En específico, esbozó que se resbaló en un área húmeda y musgosa que había en calle como consecuencia de una rotura de un tubo de la AAA. Añadió que la calle en la cual se accidentó estaba bajo el control y dominio del Municipio, entidad que no hizo ninguna gestión para evitar que se creara el musgo a raíz del agua que discurriría por el área. A su vez, precisó que el agua que discurría por las calles era producto de la rotura de un tubo, propiedad y bajo el control de la AAA. Así, detalló que el accidente se debió única y exclusivamente a la negligencia de los demandados, al crear y permitir el área peligrosa que ocasionó su caída. Solicitó una compensación no menor de $50,000.00 por los daños sufridos, consistentes en: dolores en su cuello, espalda, cabeza, brazos y pierna izquierda.

En respuesta, el 20 de septiembre de 2021, la AAA presentó su *Contestación a la Demanda*. En su comparecencia, negó las alegaciones de la demanda y consignó varias defensas afirmativas. Entre otras cosas, arguyó que la causa próxima de la caída fue provocada por las acciones u omisiones, culposas o negligentes del señor Batista Figueroa. Añadió que el demandante asumió el riesgo al caminar por el lugar donde alegó que existía una condición peligrosa, sin tomar las medidas preventivas que fueran necesarias. En la alternativa, adujo que procedía imponer negligencia comparada y que ésta, al ser significativamente mayor a la imputable a cualquiera de las partes demandadas, absorbía a las demás. Además, alegó que el lugar donde ocurrió el accidente estaba bajo la jurisdicción del Municipio y/o el Departamento de Transportación y Obras Públicas, por lo que la AAA no respondía. Razonó que los daños alegados en la demanda eran exagerados y excesivos, algunos de los cuales eran preexistentes.

El 10 de noviembre de 2021, el Municipio instó su *Contestación a Demanda*. En el referido escrito, alegó, entre otras cosas, que no fue negligente y que no conocía, ni podía imputársele conocimiento de la alegada condición peligrosa concernida. Esgrimió que mantuvo las áreas bajo su control y jurisdicción en condiciones de seguridad adecuada para sus visitantes y ejerció cuidado razonable en el monitoreo y mantenimiento de éstas.

Así las cosas, el 10 de marzo de 2023, el señor Batista Figueroa instó una *Moción Solicitando Desistimiento con Perjuicio a Favor del Municipio de Manatí.* El señor Batista Figueroa expresó que había firmado un acuerdo privado de transacción con el Municipio, mediante el cual se pactó que desistiría de la reclamación en su contra. En respuesta, el 10 de marzo de 2023, el TPI emitió *Sentencia Parcial Final,* desestimando con perjuicio la causa de acción contra el Municipio.

Luego de varios trámites procesales, el 9 de agosto de 2023 se llevó a cabo el juicio en su fondo. La parte demandante presentó los siguientes testigos: el perito médico, doctor Edwin Miranda Aponte, y el señor Batista Figueroa. Por la parte demandada testificaron: el señor Luis Aníbal Heil Salgado, Profesional de Apoyo-Técnico de la AAA y el señor Juan Moisés Cordero González, Supervisor de Operaciones de Manatí de la AAA. Tras evaluar dichos testimonios, en unión a la prueba documental presentada, el 12 de enero de 2024, el TPI emitió una *Sentencia Enmendada* en la cual declaró *Ha Lugar* la demanda de referencia.

Conforme lo anterior, el TPI formuló las siguientes determinaciones de hechos:

1) El 9 de julio de 2021, en la intersección de la Carretera número 670 con la calle Eugenio Sánchez López de Manatí, el demandante de 56 años sufrió una caída, a eso de las 8:40 de la mañana, al resbalar en un área mojada, musgosa y con limo verde que había en dicha carretera frente al negocio del cual salió de desayunar.

2) El demandante, al bajarse de su vehículo, vio un charco de agua grande frente al negocio y que había un tubo roto a mano derecha del cual salía agua a presión como si fuera una fuente que cubría toda el área de la calle.

3) La única manera de acceder al negocio o salir de él era pasando por encima del agua que bajaba por la calle.

4) El demandante se percató que el agua provenía de un chorro que salía como si fuera una fuente, hacia arriba y que era limpia, por lo que entendió que era un tubo roto.

5) El demandante escuchó que las personas que estaban alrededor cuando sufrió la caída expresaron que se trataba de un tubo roto de la Autoridad de Acueductos y Alcantarillados.

6) El demandante, al resbalar en el área mojada, musgosa y con limo verde, cayó de espaldas y se golpeó fuerte en la cabeza, en todo el cuerpo y sintió un dolor muy fuerte en la pierna izquierda.

7) El demandante no se pudo levantar por sí al caer en la carretera mojada y musgosa, pues estaba con la ropa "entripada" y llena de limo verde y con un dolor "tremendo, inmenso", por lo que fue levantado por personas desconocidas para él que estaban en los alrededores, quiénes lo levantaron y sentaron pegado a una pared.

8) En la fecha, hora y lugar del accidente estuvo presente la Policía de Puerto Rico, representada por el Agente Iván A. Rey Figueroa, placa #4574, quien fue el agente investigador del accidente.

9) En la fecha, hora y lugar del accidente llegaron los paramédicos Sánchez #1220 y Rosado #3425, quiénes, prestaron los primeros auxilios al demandante, cogiéndole los signos vitales y lo llevaron al Hospital de Manatí donde fue tratado por la caída sufrida.

10) En el Hospital de Manatí, luego de examinar al demandante y de sacarle radiografías, le diagnosticaron que tenía una fractura en el tobillo izquierdo (fíbula distal), le colocaron una bota plástica y lo refirieron a un ortopeda.

11) El demandante fue atendido por el ortopeda, Dr. Carlos Carrión Lorenzo, quien le colocó un yeso en la pierna izquierda, le recetó antiinflamatorios no esteroidales y lo refirió al Centro de Rehabilitación de la Montaña para que recibiera terapias físicas.

12) El demandante, como resultado de la caída, sufrió múltiples lesiones, fractura no desplazada en el hueso de la fíbula distal a nivel del tobillo, esguince a nivel de la columna cervical y columna lumbar.

13) El demandante recibió terapias físicas en el Centro de Rehabilitación de la Montaña, varias veces cada semana, hasta el 4 de agosto de 2021, consistentes

en colocarle paños calientes, y máquinas eléctricas que le causaban mucho dolor en el hueso.

14) El 4 de agosto de 2021, el demandante viajó a Massachusetts, Estados Unidos, lugar donde residía por los últimos 24 años, y fue tratado por el Dr. Anthony Eaton, su médico de cabecera y por el ortopeda Dr. Peter Román.

15) El Dr. Anthony Eaton le quitó el yeso de la pierna izquierda al demandante, le sacó radiografías y le expresó que el hueso no había unido bien, por lo que le puso una bota plástica y lo refirió al Centro de Rehabilitación NRH para que recibiera terapias físicas unas tres veces a la semana.

16) En el Centro de Rehabilitación NRH, el terapista Joseph Laroche, luego de evaluar al demandante, le identificó que tuvo una lesión en el cuello, porción baja de la espalda y fractura del tobillo izquierdo.

17) El tratamiento de terapias físicas recibido por el demandante en el Centro de Rehabilitación NRH le resultó muy doloroso, le colocaban pesas, paños calientes, máquinas eléctricas, le daban masajes en la pierna izquierda que le causaban mucho dolor.

18) El demandante recibió un total de 16 terapias físicas, entre las que le practicaron en Puerto Rico y las que le practicaron en Estados Unidos, las cuales continuaron hasta mediados del mes de octubre de 2021, todas muy dolorosas.

19) El 12 de octubre de 2021, el terapista físico del demandante documentó que el demandante descontinuó las terapias porque entendió que no volvería a ser el mismo.

20) El demandante sufrió dolor en diferentes intensidades de moderado a intenso en la columna cervical, parte alta de la espalda, y en la columna lumbar.

21) El demandante sufrió mucho dolor en el tobillo izquierdo, tenía que estar en muletas y le resultaba muy difícil bañarse y hacer todo.

22) El demandante, como consecuencia de la caída, tuvo limitaciones para cuidarse por sí mismo, sufrió incapacidad para agacharse, cargar peso, en lo relacionado a flexo extensión, rotación interna y externa de la columna lumbar, despertaba varias veces en la noche por el intenso dolor, no podía subir escaleras, debido a la fractura en el tobillo izquierdo y dependía de familiares y amistades para su aseo personal y limpieza de su casa, quedando limitado a conducir su vehículo de motor en distancias cortas.

23) El demandante como consecuencia de la caída tuvo limitaciones en lo referente llevar a cabo su higiene por sí mismo, bañarse por sí mismo, doblarse hacia el frente y dormir, para lo que necesitaba ayuda, despertaba varias veces en la noche debido al dolor, no podía hacer sus tareas domésticas, solo podía caminar tres minutos, tuvo muy limitada acción

para ponerse en cuclillas por el dolor de cuello y rigidez de la espalda, no podía subir escaleras por la limitación de su tobillo izquierdo.

24) Las lesiones y los daños sufridos por el demandante fueron como consecuencia de la caída sufrida en la calle Eugenio Sánchez López del Municipio de Manatí.

25) El demandante como consecuencia de la caída no podía cargar objetos pesados por el dolor en el cuello y la espalda baja, el que se agravaba al sentarse, caminar, doblarse, subir o bajar escaleras.

26) El demandante tuvo limitación del rango de movimiento de la flexión, aducción, rotación interna y externa de las caderas y de los músculos abdominales superiores e inferiores por los diagnósticos de cervicalgia, esguince de los músculos las fascias y los tendones de la espalda baja.

27) Existe una relación de causalidad entre el trauma y daños sufridos por el demandante como consecuencia de la caída y la forma en que ocurrió el trauma, las lesiones y las radiografías o rayos x del demandante.

28) El demandante se vio en la necesidad de usar en un principio una bota ortopédica, luego le fue reemplazada por muletas y posterior a ello, por un bastón para poder caminar.

29) El demandante no trabajaba desde el año 2020, cuando fue incapacitado por el seguro social por los nervios y por un diagnóstico de VIH. Previo a ello, laboraba como empleado de mantenimiento y limpieza en un sin número de lugares.

30) El demandante, antes de la caída que sufrió, era auto dependiente, era una persona independiente para realizar las tareas cotidianas del diario vivir, caminar, moverse, cargar objetos, no tenía traumatismos previos musculo esqueletales, no tenía limitaciones físicas, podía levantar cosas pesadas, podía ir al supermercado, hacer cosas en su casa.

31) El demandante, después de sufrir la caída comenzó a padecer de dolor de espalda, dolor que no padecía antes, no podía subir escaleras y dependía de la ayuda de familiares y amigos para su aseo personal y de su casa, viéndose limitado a conducir su vehículo de motor distancias cortas.

32) De acuerdo a la Escala Owestry que determina el por ciento de incapacidad, ésta reflejó que el demandante tenía un 76% de incapacidad como consecuencia de la caída que sufrió.

33) El Sr. Luis Aníbal Heil Salgado, representante de la Autoridad de Acueductos y Alcantarillados, es Profesional de Apoyo Técnico 3 y labora para la A.A.A. desde enero de 1988, quien como parte de sus funciones investigativas de reclamaciones

extrajudiciales y judiciales de terceros contra la A.A.A. investigó el caso de epígrafe.

34) El representante de la A.A.A. realizó una inspección del lugar de la caída el 12 de agosto de 2022, aproximadamente un año después de ocurridos los hechos, junto al Sr. Juan Moisés Cordero González, Jefe de Brigadas, y los representantes legales de las partes codemandadas, identificó un parcho de asfalto, tomó fotos y redactó un informe en torno a su investigación.

35) Los representantes legales de los codemandados le expresaron al representante de la A.A.A. dónde estaba el parcho de asfalto con el salidero de agua.

36) El testigo de la A.A.A. a quien esta le asignó la investigación de la caída sufrida por el demandante, no investigó en la base o banco de datos de querellas almacenadas de dicha agencia la existencia de una querella en relación al lugar de la caída previo a la fecha de la misma.

37) El Sr. Juan Moisés Cordero González-Supervisor Área de Operaciones de la A.A.A., labora para la agencia desde el año 2004, está a cargo de las brigadas de reparación desde finales del año 2009, principios del año 2010, y expresó que visitó el lugar de los hechos hace como un mes y medio a dos meses atrás (previo al juicio en su fondo) con el Sr. Luis Aníbal Heil Delgado.

38) El Sr. Juan Moisés Cordero González expresó que en el lugar de los hechos había un parcho de brea, que no tenía conocimiento ni recuerdo que hubiera realizado reparaciones ni trabajos en dicha área, que las dimensiones del parcho no reflejaban que lo hubiera reparado la A.A.A., que no era un trabajo hecho por un digger, y que no era una reparación realizada por la A.A.A.

39) El Sr. Juan Moisés Cordero González explicó que toda reparación de la A.A.A. inicia con la radicación de una querella, las cuales son almacenadas en una base o banco de datos del sistema de la A.A.A.

40) El Sr. Juan Moisés Cordero González explicó que los empleados de la A.A.A. no salen a realizar una reparación si no existe una querella y que, al salir la brigada a llevar a cabo la reparación, siempre lo hace con los documentos de la querella.

41) El Sr. Juan Moisés Cordero González expresó que hay un banco de información donde están registradas todas las querellas de la A.A.A. y que él no investigó en el referido banco de datos si existía una querella en relación a la caída del demandante en el lugar de los hechos.

42) El Sr. Juan Moisés Cordero González expresó que al decir que no hubo reparaciones de la A.A.A. en el lugar de los hechos, lo decía solo por su recuerdo o falta de recuerdo.

Basado en lo anterior, el Tribunal concluyó que el señor Batista Figueroa sufrió daños consistentes en múltiples lesiones en su cuerpo y que existía un nexo causal entre los daños y la omisión de la AAA al ser negligente por no reparar oportunamente el salidero de agua. Añadió que el limo verde existente en la calle Eugenio Sánchez López era evidencia que el salidero de agua llevaba bastante tiempo sin ser reparado, lo cual a su vez demostró la falta del debido cuidado y el no anticipar ni prever las consecuencias racionales de dicha omisión. El TPI determinó que existía un deber jurídico de actuar de la AAA de reparar el salidero y que el mismo fue la condición peligrosa que ocasionó los daños solicitados en la demanda de referencia.

En armonía con lo anterior, el TPI hizo las siguientes expresiones:

> [L]o cierto es que la parte demandada no desfiló prueba ante este Tribunal que demostrara que debajo de la calle Eugenio Sánchez López transcurre algún cuerpo de agua (río subterráneo o manantial o cualquier otro posible). Siendo ello así, resulta razonable y forzoso inferir que el salidero de agua provino de un tubo roto de la codemandada A.A.A. Lo anterior, apoyado por el testimonio del demandante, quien declaró bajo juramento que "...salía agua limpia como si fuera una fuente..., "...que salía agua con presión". Es a la A.A.A. a quien le corresponde reparar oportunamente los tubos rotos existentes en las calles. Por lo que entendemos, que, el tubo roto de la A.A.A. y su omisión en repararlo oportunamente, fue el nexo causal que produjo las lesiones, traumas y los daños sufridos por el demandante de epígrafe.

> Concluimos como cuestión de hecho y derecho, que la caída sufrida por la parte demandante se debió única y exclusivamente a la negligencia de la codemandada Autoridad de Acueductos y Alcantarillados, al crear una condición peligrosa por un salidero de agua, que cubría toda la calle Eugenio Sánchez López. De tal manera, que era imposible acceder al negocio al que se dirigía el demandante, sin tener que pasar por el área mojada y con musgo o limo verde, toda vez que toda la calle estaba mojada. Ciertamente, debemos concluir que el escape de agua llevaba bastante tiempo, pues como declaró el demandante, éste resbaló en el musgo que se le impregnó en su ropa al caerse, creado por el salidero de agua y la consecuente humedad.

El TPI no hizo determinación de imprudencia concurrente al señor Batista Figueroa, por entender que éste tomó las debidas precauciones al transitar por la calle concernida.

Por otro lado, el foro *a quo* analizó por separado las distintas partidas de daños que debían adjudicarse al señor Batista Figueroa, a los efectos de determinar su valor. Como daños especiales, el juzgador de los hechos le concedió una suma de $320.00 al señor Batista Figueroa, por las 16 terapias físicas que recibió, a razón de $20.00 cada una.

De otra parte, a raíz del testimonio del doctor Miranda Aponte, el foro de instancia determinó que los daños físicos sufridos por el señor Batista Figueroa incluyeron la fractura en su tobillo derecho[2], golpe en la cabeza y lesiones en la espalda. En consecuencia, concedió una compensación de $25,000.00 por los daños físicos sufridos por la caída. Lo anterior, bajo el fundamento de que este quedó incapacitado en un 76% conforme a la Escala *Owestry*. A su vez, el TPI concluyó que el señor Batista Figuera se vio afectado en su salud, bienestar y felicidad, por lo cual concedió una suma de $35,000.00 por las angustias mentales y sufrimientos emocionales. Conjuntamente, le impuso el pago de honorarios a la AAA por la suma de $5,000.00, por entender que dicha parte exhibió temeridad absoluta.

Así las cosas, el foro *a quo* condenó a la AAA pagar al señor Batista Figueroa todos los daños concedidos y ascendentes a la suma de $60,320.00 más las costas, gastos y los honorarios de abogados. Además, deberá satisfacer los intereses desde la presentación de la demanda al tipo del 4.5% anual.

---

[2] Adviértase que, en la determinación de los daños físicos, el TPI señala que la lesión ocurrió en el tobillo derecho, a pesar de que la prueba señala que fue en el izquierdo. Apéndice del recurso, pág. 203.

En desacuerdo con la decisión, la AAA comparece ante nosotros mediante el recurso que nos ocupa y alega que el TPI cometió los siguientes errores:

> Erró el TPI en su apreciación de la prueba testifical y documental admitida en el juicio y en sus determinaciones de hechos, las cuales no representan el balance más justiciero de la totalidad de la evidencia recibida.

> Erró el TPI al determinar que la Apelante causó el accidente alegado en la demanda y que ni el Apelado ni el Municipio incurrieron en negligencia.

> Erró el TPI al determinar que la AAA actuó con temeridad e imponerle el pago de honorarios e intereses.

> Erró el TPI al estimar el valor de los daños sufridos por el Apelado y concederle a dicha parte una compensación improcedente en derecho y exageradamente alta.

(Negrillas suprimidas).

El 20 de febrero de 2024, este Tribunal concedió mediante *Resolución,* 20 días a la AAA para presentar su alegato. El 4 de marzo de 2024, la AAA presentó *Alegato de la Parte Apelada.* Con el beneficio de la comparecencia de ambas partes y la transcripción del juicio en su fondo, estamos en posición de resolver.

**II.**

**A.**

El Artículo 1536 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 10801, establece que, "la persona que por culpa o negligencia cause daño a otra, viene obligada a repararlo". Esta disposición es el umbral de la responsabilidad extracontractual y obliga a quien ocasione daño por culpa o negligencia, a resarcir a la víctima.

Por consiguiente, para probar una causa de acción por daños y perjuicios, el promovente deberá demostrar, mediante preponderancia de la prueba: (1) que se ha sufrido un daño; (2) por medio de un acto u omisión culposo o negligente; y (3) que existe un nexo causal entre la acción u omisión de la parte y el daño sufrido.

*García v. E.L.A.,* 163 DPR 800, 809 (2005). Así pues, el que un demandante ostente el derecho a recibir indemnización por un alegado daño presupone la existencia de un nexo causal entre el daño y el factor que lo origina. Es decir, sólo corresponde indemnizar los daños que son consecuencia del hecho que obliga a la indemnización. *Rivera Jiménez v. Garrido & Co., Inc.,* 134 DPR 840, 851-852 (1993).

Se ha establecido que la culpa o negligencia consiste en "la falta del debido cuidado, que a la vez consiste en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias". *Pérez et al. v. Lares Medical et al.,* 207 DPR 965, 976-977 (2021); *López v. Porrata Doria,* 169 DPR 135, 151 (2006). Cuando se alegue haber sufrido daños como consecuencia de la negligencia de la parte demandada, el peso de la prueba respecto a la alegada negligencia le corresponde a la parte demandante. *Colón y otros v. Kmart y otros,* 154 DPR 510, 521 (2001); *Matos v. Adm. Servs. Médicos de PR,* 118 DPR 567, 569 (1987).

En Puerto Rico rige la teoría de la causalidad adecuada para determinar el nexo causal necesario para adjudicar responsabilidad civil. La causa adecuada es la que, según la experiencia general, ordinariamente produce los daños imputados. No es otra cosa que el evento o acto que con mayor probabilidad causó el daño por el que se reclama indemnización. *Miranda v. ELA,* 137 DPR 700, 707 (1994); *Negrón García v. Noriega Ortiz,* 117 DPR 570, 575 (1984). Así pues, un daño parece ser el resultado natural y probable de un acto negligente si después del suceso, y mirándolo retroactivamente el acto que se alega ser negligente, tal daño aparece como la consecuencia razonable y ordinaria del acto. *Montalvo v. Cruz,* 144 DPR 748, 756-757 (1998), citando a *Torres Trumbull v. Pesquera,* 97 DPR 338, 343-344 (1969).

**B.**

Por otra parte, en Puerto Rico existe una fuerte política pública para promover que se transijan las controversias y evitar que lleguen a los tribunales porque se ahorra tiempo y dinero a las partes involucradas, descongestionan los calendarios judiciales y propenden al diálogo y paz entre los ciudadanos. *Carpets v. Rugs v. Tropical Reps*, 175 DPR 615, 629 (2009). Por lo general, en los casos de daños y perjuicios, los demandantes pueden renunciar a la reclamación contra alguno de los cocausante solidarios, o con todos, a través del contrato de transacción. *Sagardía de Jesús v. Hosp. Aux. Mutuo,* 177 DPR 484, 498 (2009).

En lo pertinente, el Tribunal Supremo de Puerto Rico resolvió en *Rodríguez et al. v. Hospital et al.*, 186 DPR 889, 908 (2012), que:

> El que varios codemandados transigieran el pleito, en un acuerdo que los relevó de su responsabilidad interna y externa, no implica que se obvie el hecho de que pudieron ocasionar parte de los daños. **La porción de responsabilidad de todos los originalmente demandados debe detallarse en la sentencia. Si se concluyera que alguno de los codemandados no incurrió en responsabilidad, debe hacerse constar también en la sentencia.** (Énfasis nuestro).

De hecho, en *US Fire Insurance v. A.E.E.*, 174 DPR 846, 860-861 (2008), el Tribunal Supremo de Puerto Rico aclaró que la determinación judicial de responsabilidad debe indicar la porción exacta que corresponde a cada cocausante o, de lo contrario, se impondrá responsabilidad en cuotas iguales. Sin embargo, en esa ocasión también se advirtió que ello no impide que las partes recurran a los mecanismos procesales disponibles para que se especifique el porciento de responsabilidad de cada uno. *Íd.*, pág. 861 esc. 4. El Tribunal de Primera Instancia debe aclarar qué porción de responsabilidad corresponde a cada uno de los demandados, incluyendo a los que transigieron el pleito. En la sentencia debe hacerse constar la porción de responsabilidad de cada codemandado, y restarse los porcientos correspondientes a los

codemandados liberados mediante transacción total de las cuantías estimadas de daños. *Rodríguez et al. v. Hospital et al.*, supra, pág. 908.

**C.**

La tarea de estimar y valorar daños es una labor difícil, ardua y angustiosa, pues no existen fórmulas matemáticas o científicas de especificidad exacta que indiquen como se justiprecia el dolor y el sufrimiento. *Sucn. Mena Pamias et al. v. Meléndez et al.,* 212 DPR 758 (2023); *Rodríguez et al. v. Hospital et al.*, supra, pág. 909; *Herrera, Rivera v. SLG Ramírez-Vicéns*, 179 DPR 774, 791 (2010); *Vázquez Figueroa v. E.L.A.*, 172 DPR 150, 154 (2007); *Nieves Cruz v. UPR*, 151 DPR 150, 169-170 (2000). No existe un sistema de computación que permita llegar a un resultado exacto con el cual todas las partes queden complacidas y satisfechas. *Santiago Montañez v. Fresenius Medical*, 195 DPR 476, 490 (2016). La valorización del daño descansa en la discreción, prudencia, juicio y razonabilidad del juzgador o la juzgadora de hechos motivado por un sentido de justicia y de conciencia humana. *Urrutia v. AAA*, 103 DPR 643, 647 (1975). Esta responde a factores únicos, por lo que debe ser considerada conforme a los hechos y circunstancias particulares de cada caso. *Nieves Cruz v. UPR*, supra, pág. 177. Debe añadirse, que los tribunales deben tomar en consideración "las circunstancias particulares del caso considerado […]". De modo que, "el foro sentenciador no puede descansar meramente en un cálculo matemático. Es un análisis de dos pasos". *Sucn. Mena Pamias et al. v. Meléndez et al.*, supra.

Al medir el daño a ser compensado, el juzgador o juzgadora debe hacerlo a base de la prueba, procurando siempre que la indemnización no se convierta en una industria y se mantenga su sentido remediador, no punitivo. *S.L.G. Rodríguez v. Nationwide*, 156 DPR 614, 628 (2002). Por lo tanto, los tribunales deben buscar

una proporción razonable entre el daño causado y la indemnización concedida, de suerte que la adjudicación sea balanceada, es decir, ni extremadamente baja ni desproporcionalmente alta. *Blás v. Hosp. Guadalupe*, 146 DPR 267, 342 (1998). *Santiago Montañez v. Fresenius Medical,* supra, pág. 490; *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 203 (2013). Ello responde a que los jueces de instancia están en mejor posición que los tribunales apelativos para evaluar los daños, toda vez que estos son los que tienen contacto directo con la prueba presentada. *Blás v. Hosp. Guadalupe,* supra, pág. 339. En ese sentido, los tribunales apelativos no debemos intervenir con la apreciación de la prueba y con la valoración de daños que un tribunal de instancia haya realizado, **a menos que las cuantías concebidas sean ridículamente bajas o exageradamente altas.** (Énfasis nuestro). *Santiago Montañez v. Fresenius Medical,* supra, en la pág. 490; *Meléndez Vega v. El Vocero de PR*, supra, pág. 203.

Nuestro Tribunal Supremo ha establecido que, para evaluar si la compensación concedida por el Tribunal de Primera Instancia es ridículamente baja o exageradamente alta, debemos examinar la prueba desfilada ante ese foro y las cuantías otorgadas en casos similares resueltos anteriormente. *Herrera, Rivera v. SLG Ramírez-Vicéns,* 179 DPR 774, 785 (2010). En ese sentido, las indemnizaciones concedidas en casos anteriores constituyen un punto de partida y referencia útil para pasar juicio sobre las concesiones otorgadas por el foro primario. *Rodríguez et al. v. Hospital et al.*, supra, págs. 909–910; *Herrera, Rivera v. S.L.G. Ramírez-Vicéns*, supra, pág. 785. Ello es así aun cuando es sabido que no existen dos casos exactamente iguales y que cada caso es distinguible según sus circunstancias particulares. *Íd.* En todo caso, las compensaciones otorgadas en casos anteriores deben ajustarse a su valor presente. *Sucn. Mena Pamias et al. v. Meléndez et al.,*

supra*,* citando a *Santiago Montañez v. Fresenius Medical,* supra, pág. 491. Véase, además, *Meléndez Vega v. El Vocero de PR,* supra, pág. 204; *Rodríguez et al. v. Hospital et al.,* supra, pág. 910; *Herrera, Rivera v. S.L.G. Ramírez-Vicéns,* supra, pág. 785.

Cónsono con lo anterior, el juzgador o la juzgadora tiene la obligación de especificar la jurisprudencia que haya usado como guía para valorar los daños al igual que el cómputo realizado para ajustar las cuantías de casos anteriores a su valor actual.

**D.**

Nuestro derecho procesal civil le brinda al TPI la facultad de imponer, ya sea a la parte litigante o a la representación legal que obró de forma temeraria o frívola, el pago de honorarios de abogado.[3] Como bien se ha expresado, ésta recae en la discreción del foro adjudicador, pero **cuando existe una determinación de temeridad la imposición de honorarios es imperativa**. *Blás v. Hosp. Guadalupe,* supra, pág. 334, citando a *Montañez Cruz v. Metropolitan Cons. Corp.,* 87 DPR 38 (1962) y otros. (Énfasis nuestro). La imposición de honorarios de abogado por temeridad no será variada, a menos que la misma constituya un abuso de discreción. *Maderas Tratadas v. Sun Alliance,* 185 DPR 880, 926 (2012).

El propósito de la imposición de honorarios de abogado en casos de temeridad es establecer una penalidad a un litigante perdidoso que, por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte a innecesariamente asumir las molestias, gastos, trabajos e inconvenientes de un pleito. *Andamios de Puerto Rico, Inc. v. Newport Bonding,* 179 DPR 503, 520 (2010); *Blas v. Hosp.*

---

[3] Regla 44.1(d) de Procedimiento Civil de Puerto Rico, 32 LPRA Ap. V, R. 44.1(d).

*Guadalupe, supra,* en la pág. 335; *Fernández v. San Juan Cement Co., Inc.,* 118 DPR 713, 718 (1987).

**III.**

Por estar íntimamente relacionados, discutiremos en conjunto los errores señalados por la AAA. En el caso ante nuestra consideración, dicha parte esencialmente arguye que el TPI erró al interpretar la prueba documental, testimonial y pericial disponible. Por su parte, el señor Batista Figueroa está de acuerdo con el dictamen apelado.

Como norma general, los tribunales apelativos no intervendremos con las determinaciones de hechos, con la apreciación de la prueba, ni con la adjudicación de credibilidad efectuadas por el TPI, salvo en situaciones en que éste haya incurrido en pasión, prejuicio, parcialidad o error manifiesto. *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 753 (2013); *Gómez Márquez et al. v. El Oriental,* 203 DPR 783, 793 (2020).

En este caso, al examinar cuidadosamente la transcripción de la prueba oral, concluimos que no debemos intervenir con la apreciación de la prueba testifical, ni con la adjudicación de credibilidad que el TPI les confirió a los testigos. El testimonio del señor Batista Figueroa le mereció credibilidad al TPI, al igual que el del doctor Miranda Aponte. Sin embargo, conforme explicaremos más adelante, es claro que el TPI erró al concluir que del referido testimonio se puede determinar la incapacidad del señor Batista Figueroa.

No percibimos que medió prejuicio, pasión, parcialidad o abuso de discreción en la apreciación de la prueba por parte del juzgador de hechos. La AAA es responsable por la negligencia incurrida, la cual provocó los daños sufridos por el señor Batista Figueroa. La negligencia incurrida por la AAA estriba en no haber asumido su responsabilidad de reparar oportunamente el salidero

de agua en la calle Eugenio Sánchez López, permitiendo que se acumulara limo verde. Era sensatamente previsible que el no suministrar el mantenimiento requerido al salidero, podía producir un accidente a quien pretendiera transitar por dicha vía.

La AAA presentó o testimonios del señor Heil Salgado y el señor Cordero González. Del testimonio del señor Heil Salgado, quien realizó la inspección del lugar del accidente y expresó que tomó fotos y redactó un informe de su investigación, surge que cuando la AAA repara, hace parchos en brea y no hace reparaciones de salideros. Este no investigó en la base de datos de la referida agencia si existía una querella en torno al lugar en el cual ocurrió la caída del señor Batista Figueroa para la fecha de los hechos. Se enteró del accidente un año después de ocurrido y visitó el lugar en dos (2) ocasiones.[4]

El testigo Cordero González expuso que no tenía conocimiento ni recuerdo que se hubieran hecho en el lugar del incidente reparaciones y que las dimensiones no reflejaban que fue un parcho que la AAA hubiera efectuado. De hecho, destacó que, aunque todas las reparaciones que realiza la AAA pasan por sus manos, no podía precisar que hubo alguna reparación en dicho lugar. Reiteró que no recordaba que se hubiera hecho una reparación en el lugar del accidente, más dejó claro que no investigó la base de datos de la AAA para corroborar si allí constaba una reparación en el lugar donde ocurrió la caída del señor Batista Figueroa.[5] En su dictamen, el Tribunal pronunció que el testigo Cordero González no le mereció credibilidad por "su *demeanor*, confusión en su memoria para recordar y forma de declarar".

---

[4] Transcripción de la Prueba Oral (TPO), apéndice del recurso, págs. 304, 308-319, 324-325.
[5] *Íd.*, págs. 329, 335-336, 341, 344-345.

Al evaluar la prueba presentada, el TPI concluyó que el señor Batista Figueroa tenía un 76 % de incapacidad basado en la Escala *Owestry*. Sin embargo, dicha determinación debe ser descartada. Del testimonio del doctor Miranda Aponte se desprende que éste no tenía conocimiento de la información con la que sustentó dicha conclusión. En específico, señaló que desconocía los datos utilizados por el terapista físico Laroche para determinar la incapacidad del señor Batista Figueroa. De igual forma, el referido galeno admitió que desconocía el tipo de incapacidad a la que se refería el terapista físico porque esa información fue omitida en el informe y que no tuvo ante sí la escala. Incluso, el doctor Miranda Aponte declaró *ad verbatim* lo siguiente: […] "Al no saber la escala ni los detalles de la escala, yo no puedo opinar sobre el particular".[6]

Por otra parte, el TPI incumplió con la normativa expuesta en *Santiago Montañez v. Fresenius Medical*, supra. Si bien el Tribunal incluyó en su pronunciamiento varios casos similares que utilizó como guía para la concesión de las partidas de daños especiales, daños físicos y angustias mentales, es claro que no incluyó el cálculo realizado para ajustar las cuantías allí concedidas al valor presente. Nuestro Tribunal Supremo ha advertido a los jueces sobre la importancia de lo anterior. Por tanto, procede la devolución del caso al foro *a quo* para que, de conformidad con el caso de *Santiago Montañez v. Fresenius Medical*, supra, compute y adjudique las partidas que procedan en concepto de daños del señor Batista Figueroa, ajustadas al valor presente.

Más aun, es preciso resaltar que el récord refleja que el señor Batista Figueroa llegó a un acuerdo transaccional con el Municipio, mediante un contrato confidencial cuyo contenido y detalles se desconocen. El señor Batista Figueroa sólo se limitó a informar que

---

[6] TPO, apéndice del recurso, págs. 240-244.

desistía del pleito contra el Municipio porque llegó a un acuerdo. Sin embargo, conforme al derecho expuesto, el TPI debe establecer el porciento de responsabilidad atribuible al Municipio, si alguna. Así mismo, en caso de que el TPI entienda que el Municipio no tiene responsabilidad frente al señor Batista Figueroa, deberá indicarlo de la misma forma en su dictamen. En su Sentencia, el TPI erró al no imponer o exonerar de responsabilidad al Municipio, a pesar de estar obligado a ello.

En consecuencia, el TPI debe aclarar qué porción de responsabilidad, si alguna, corresponde a cada uno de los demandados, incluyendo al Municipio con el que el señor Batista Figueroa transigió el pleito y pactó su desistimiento.

En relación con los honorarios por temeridad impuestos a la AAA, razonamos que estos se sostienen. Lo anterior es una decisión discrecional del foro primario. En el caso de autos, la AAA no demostró que el TPI abusó de su discreción al hacer una determinación de temeridad en su contra. La conducta de la aludida entidad en el transcurso del caso movió al tribunal a tal determinación. Ante la ausencia de una decisión irrazonable y, toda vez que la cuantía de $5,000.00 impuesta no nos parece excesiva, no intervendremos con esta.

**IV.**

Por las consideraciones que preceden, confirmamos la *Sentencia Enmendada* apelada sólo en cuanto a: (1) la determinación de responsabilidad por negligencia a la AAA por los daños ocasionados al señor Batista Figueroa y (2) la determinación de imponerle honorarios por temeridad a la AAA.

Por otro lado, devolvemos el caso al Tribunal de Primera Instancia para que:

1) Excluya como evidencia la determinación de 76% de incapacidad, que fue tomado en consideración a raíz del testimonio del perito médico Miranda Aponte.

2) Detalle la porción de responsabilidad en la que incurrió el Municipio, si alguna, toda vez que el ayuntamiento transigió la demanda con el señor Batista Figueroa. La sentencia deberá contener el desglose;

3) Incluya los cálculos matemáticos y el análisis correspondiente que realizó para otorgar las compensaciones por los daños físicos y emocionales, de conformidad con el caso *Santiago Montañez v. Fresenius Medical*, supra; y

Lo acordó el Tribunal y lo certifica la Secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones