ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| **GERARDO COLÓN MEJÍAS**<br><br>Apelado<br><br>v.<br><br>**ISLAND RECYCLING CORP., y otros**<br><br>Apelante | KLAN202400245 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de **Carolina**<br><br>Civil Núm.: CA2021CV00960<br><br>Sobre: Accidente de Tránsito, Daños y Perjuicios |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores.

Cintrón Cintrón, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 21 de noviembre de 2024.

Comparece ante nos, Island Recycling Corp., (en adelante, Island Recycling o parte apelante) y solicita que se revoque la Sentencia emitida el 19 de enero de 2024 por el Tribunal de Primera Instancia (TPI), Sala Superior de Carolina. Mediante la misma, el foro primario declaró *con lugar* la demanda instada por el señor Gerardo Colón Mejías (en adelante, señor Colón Mejías) y ordenó a Island Recycling a satisfacer la suma de $45,000.00 en concepto de daños y angustias mentales y $3,000.00 por concepto de honorarios de abogado.

Por los fundamentos que expondremos a continuación, se confirma la sentencia apelada.

### I.

La causa de epígrafe tuvo su origen el 22 de abril de 2021, cuando el señor Colón Mejías presentó una demanda de daños y perjuicios en contra de Island Recycling. En esta reclamó el resarcimiento de los daños sufridos a raíz de un accidente de tránsito ocurrido el 9 de abril de 2021, cerca de las 9:30 a.m. en la

carretera número PR-175 en dirección de Caguas a Trujillo Alto. El señor Colón Mejías alegó que un empleado de Island Recycling conducía un camión de la compañía e invadió su carril ocasionando el choque. Debido a lo anterior, el señor Colón Mejías arguyó que Island Recycling respondía por los daños y perjuicios ocasionados por ser dueño registral del vehículo involucrado en el incidente. Solicitó una compensación por los daños físicos y emocionales sufridos, los cuales estimó en $90,000.00 y $20,000.00, respectivamente.

Island Recycling contestó la demanda oportunamente, negó las alegaciones en su contra; esgrimió que el camión concernido no se operó de manera negligente y adujo que el protocolo de carga aplicable se cumplió. Además, negó todas las alegaciones de daños presentadas en su contra, e hizo hincapié en que existían servicios brindados por la Administración de Compensaciones por Accidentes de Automóviles, compañía aseguradora, así como seguro compulsorio. Por último, Island Recycling solicitó al TPI que desestimara la demanda.

Luego de varios trámites procesales innecesarios de pormenorizar, se celebró el juicio en su fondo el 13 de diciembre de 2023. Las partes estipularon cierta evidencia documental.[1] El señor Colón Mejías presentó como prueba documental tres (3) fotografías de los daños en su vehículo y dos (2) fotografías del camión propiedad de Island Recycling, así como el informe del doctor Omar Gómez Medina, perito de impedimento. De otro lado, Island Recycling ofreció como prueba copia de la póliza de seguro suscrita por la Cooperativa de Seguros Múltiples emitida a su favor.

---

[1] La prueba documental estipulada fue una copia de la carta del Lcdo. Miranda Matos dirigida a la compañía Island Recycling con fecha del 12 de abril de 2021, en la cual solicitó información relacionada a la póliza de responsabilidad pública vigente que ostentara la unidad al momento de los hechos y una copia del correo electrónico de Island Recycling, en respuesta, con fecha del 15 de abril de 2021, en el que ofreció el número de reclamación de la póliza y el contacto para completar el proceso de reclamación. (SUMAC #24).

La prueba testifical de la parte demandante consistió en los testimonios del doctor Gómez Medina y el propio señor Colón Mejías. Island Recycling presentó como único testigo al señor Wilfredo Medina Ramírez, presidente de la corporación.

Aquilatada la prueba testifical y documental presentada, el 19 de enero de 2024, el Tribunal de Primera Instancia declaró *con lugar* la demanda y ordenó a Island Recycling indemnizar al señor Colón Mejías la suma de $45,000.00 en concepto de daños y angustias mentales y $3,000.00 por concepto de honorarios de abogado.

Conforme lo anterior, el TPI formuló las siguientes determinaciones de hechos:

1) El señor Gerardo Colón Mejías tiene 34 años, está casado, tiene un grado técnico de chef, pero en la actualidad se desempeña como jardinero.

2) Previo a los hechos de este caso el demandante nunca había presentado una demanda, nunca había reclamado los beneficios de la Corporación del Fondo del Seguro del Estado y nunca había estado involucrado en un accidente de motor en el que sufriera daños físicos.

3) Antes de los hechos materiales de este caso el demandante no padecía de condiciones de salud física y no tenía padecimientos y/o limitaciones en el área cervical o lumbar.

4) Previo a los hechos materiales de este caso el demandante había recibido tratamiento psiquiátrico.

5) El 9 de abril de 2021, cerca de las 9:30 a.m., el demandante se encontraba conduciendo un vehículo Mazda, modelo B4000, tipo pickup, de color verde, por la carretera número PR 175 en dirección de Caguas a Trujillo Alto.

6) Ese día 9 de abril de 2021 era un día soleado, el pavimento se encontraba seco y no había mucho tráfico.

7) La carretera número PR-175 es una carretera de dos (2) carriles (uno en cada dirección) y de curvas.

8) Mientras el demandante conducía su pickup en dirección de Caguas a Trujillo Alto un empleado de la demandada conducía el camión color blanco y verde, tablilla HP-13706, en dirección de Trujillo Alto a Caguas.

9)  El camión de la demandada estaba rotulado con el logo de la empresa demandada y el mismo era utilizado para recoger metales; la tumba color verde del camión tenía en la parte posterior una compuerta de una sola hoja de siete (7) pies de ancho y cinco (5) pies de alto que abría completamente hacia el lado del chofer, girando sobre dos (2) goznes instalados en el lado del chofer.

10) Del testimonio creído de la parte demandante y las fotografías marcadas, la tumba del camión en cuestión estaba en mal estado y el sistema de cierres de la compuerta inservible por la corrosión; esta situación del cierre corroído ocasionó que el camión discurriera el día de los hechos por la carretera número PR-175 con la compuerta trasera abierta.

11) El vehículo pickup del demandante y el camión de la demandada se encontraron en una de las curvas de la carretera número PR-175.

12) Al encontrarse los vehículos el camión llevaba la compuerta trasera completamente abierta hacia el lado del chofer, invadiendo el carril por el que discurría el demandante.

13) Al toparse con la situación antes descrita el demandante intentó mover la pickup hacia el tramo de la derecha del carril, pero a pesar de este intento la compuerta trasera del camión impactó el parabrisas delantero en el poste del lado del chofer.

14) El impacto de la compuerta fue de tal magnitud que el parabrisas delantero se rompió en pedazos, el poste frontal del parabrisas y el marco de la puerta del chofer se deformaron y el cristal del lado del chofer se hizo trizas; en cuanto al camión se refiere el impacto fue de tal magnitud que el borde inferior derecho de la compuerta -a pesar de estar construida en acero- se deformó en el punto de impacto.

15) A raíz del impacto el vehículo del demandante salió propulsado para atrás y se detuvo en plena vía de rodaje. El camión, en cambio, continuó la marcha y no se detuvo.

16) Inmediatamente después del accidente el demandante se sintió un poco aturdido con dolor en el área de la espalda.

17) Con la ayuda de un samaritano que se detuvo el demandante logró encender el vehículo pickup y comenzó a conducir por la carretera número PR-175 en dirección de Trujillo Alto hacia Caguas con la esperanza de alcanzar el camión.

18) Al poco tiempo el demandante se encontró con el camión detenido frente al negocio El Toledo y allí le informó lo que había sucedido al conductor del camión.

19) Además de informarle al conductor del camión de lo sucedido, el demandante asistió al chofer en asegurar la compuerta del camión; esto lo hizo amarrando la compuerta con lo que denominó como una slinga.

20) Tras ser entrevistado por la Policía, el demandante condujo la pickup hasta su hogar y de allí salió en compañía de su esposa al Hospital Menonita de Aibonito.

21) En la sala de emergencias de la referida institución médico-hospitalaria al demandante le administraron, de forma intravenosa, morfina y benadryl; además, le hicieron estudios de tomografía computarizada (CT Scan) del área cervical, el pecho y el cerebro.

22) En horas de la noche el demandante fue dado de alta con una receta de medicamentos para el dolor; esa noche el demandante no pudo conciliar el sueño debido al dolor que le afectaba.

23) En los días subsiguientes el demandante continuó experimentando dolores en las áreas afectadas, razón por la cual el día 14 de abril de 2021 regresó a la Sala de Emergencias del Hospital Menonita de Aibonito.

24) En esta ocasión le hicieron un CT Scan del área lumbar, una radiografía del área lumbar y le administraron tres (3) medicamentos intramuscularmente.

25) A pesar de este tratamiento el demandante no obtuvo mejoría y continuó padeciendo dolencias en el área de la espalda.

26) Afectado por los dolores y carente de un vehículo de motor para ir a trabajar, el demandante comenzó a descompensarse emocionalmente y poco a poco fue cayendo en una depresión. Esto a su vez ocasionó una serie de problemas matrimoniales entre el demandante y su esposa.

27) Para atender su condición emocional el demandante visitó el día 29 de abril de 2021 el Hospital CIMA Menonita, en donde fue admitido a una hospitalización parcial bajo el diagnóstico de depresión, siendo tratado con psicoterapias y medicamentos (Lexapro y Ambien).

28) El demandante permaneció hospitalizado parcialmente entre el 29 de abril y 5 de mayo de 2021. Al momento del alta el psiquiatra indicó en el expediente: "Paciente masculino de 32 años quien no tiene historial previo de salud mental. Refiere sufrió un accidente vehicular hace aprox. un mes, perdió su vehículo el cual era clave para trabajar y su

relación se ha deteriorado al nivel de una posible separación."

29) Casi dos (2) semanas después de ser dado de alta de la hospitalización psiquiátrica -17 de mayo de 2021- el demandante fue evaluado por la fisiatra Dra. Marie C. Lugo Cruz.

30) Como resultado de la evaluación inicial, la doctora Lugo Cruz diagnosticó dorsopatía lumbosacral, espasmo muscular de la espalda, dolor de la espalda baja y desgarre de la espalda baja.

31) Ante estos hallazgos la fisiatra recomendó ocho (8) sesiones de terapia física consistentes en compresas frías/calientes, estimulación eléctrica, ultrasonido, masajes y ejercicios terapéuticos.

32) El demandante se sometió al régimen de terapias prescrito y el 6 de agosto de 2021 fue reevaluado por la doctora Lugo Cruz quien volvió a diagnosticar dorsopatía lumbosacral, espasmo muscular de la espalda, dolor de la espalda baja y desgarre de la espalda baja y ordenó un MRI del área lumbar.

33) Conforme a la prescripción médica el demandante se sometió al estudio de resonancia magnética el día 30 de septiembre de 2021 el que demostró cambios degenerativos y estrechez del canal espinal a nivel L3-L4 y L5-S1.

34) Conforme al testimonio creído por este Tribunal al día de hoy el demandante se encuentra recuperado, aunque no del todo. El demandante aún tiene dolores y limitaciones en el área de la espalda que le impiden conducir su vida y trabajar como lo hacía antes del accidente.

35) Al momento de la evaluación con el doctor Gómez Medina, perito de impedimento, el demandante presentaba endurecimiento (tenderness) en el área de los músculos paraespinales.

36) Ante estos hallazgos el perito diagnosticó esguince lumbar y concluyó que el señor Colón padece de un 1% de impedimento en las funciones fisiológicas generales.

El TPI concluyó que el día del accidente el señor Colón Mejías conducía de manera prudente y razonable por la carretera número PR-175 cuando se encontró con parte de su carril invadido por la compuerta posterior del camión de Island Recycling que discurría en dirección contraria. Añadió que: "cuando los vehículos se cruzaron, la compuerta trasera del camión impactó el parabrisas del vehículo de la parte demandante en el lado chofer. En estrecha

relación con lo que antecede, la evidencia creída demostró que el impacto fue tan violento que la pickup del demandante salió propulsada hacia atrás y se detuvo en plena vía de rodaje."

Asimismo, el Tribunal de Primera Instancia determinó que, no solo el señor Colón Mejías logró establecer la forma y manera en que ocurrió el accidente, sino que también demostró que la causa próxima y eficiente fue la negligencia de la compañía demandada en el mantenimiento del camión. Ello, tras establecer que la compuerta trasera del camión se abrió porque el sistema de cierres que se supone que mantuviese la puerta cerrada se encontraba totalmente corroído.

El TPI concluyó que la evidencia desfilada por el propio demandante y su perito Gómez Medina manifestaron que por los hechos de este caso el primero desarrolló dolores en el área lumbar por el que recibió tratamiento médico. Además, el juzgador de los hechos determinó que el señor Colón Mejías sobrellevó una descompensación emocional que lo sumió en una depresión. Esbozó que el tratamiento de la condición de depresión consistió en una hospitalización parcial en la cual se le administró psicoterapia y fármacos. En consonancia con lo anterior, el TPI expresó lo siguiente:

> Hoy en día a pesar de este tratamiento médico el señor Colón aún padece de dolores y limitaciones en las áreas afectadas que le impiden conducir su vida como lo hacía antes del accidente. Fue en consideración de estas limitaciones que el doctor Gómez Medina -después de una evaluación en la que encontró endurecimiento en las bandas paraespinales e hizo un diagnóstico de esguince lumbar- concluyó que el demandante padece de un 1% de impedimento en las funciones fisiológicas generales.

El TPI valoró las lesiones lumbares del señor Colón Mejías según la normativa dispuesta en *Canales Velázquez v. Rosario Quiles,* 107 DPR 757 (1978) y la fórmula de valoración de *Santiago*

*Montañes v. Fresenius Medical Care,* 195 DPR 476 (2016).[2] Así, determinó que el valor presente de una lesión lumbar, como el del caso que nos ocupa, asciende a $56,315.79. Además, el TPI expuso que:

> Este Tribunal reconoce como persuasivo el caso antes mencionado y por sus similitudes toma su valoración como apoyo en el análisis del caso ante nos. Aunque el caso ante nos tiene particulares que el caso de Canales, supra, no tiene -por ejemplo, en este caso hubo una agravación de una condición psiquiátrica, que conllevó una hospitalización parcial y en este caso tenemos una determinación de impedimento en las funciones fisiológicas generales- no habremos de aumentar dicha compensación. En consideración de lo antes indicado y utilizando la discreción que nuestro ordenamiento nos concede valoramos los daños físicos y emocionales del señor Colón en $45,000.00.

Por último, el foro *a quo* dictaminó que Island Recycling incurrió en temeridad al ampararse en una teoría inverosímil y contraria a la contundente evidencia objetiva que se presentó en el caso. Por dicha razón, encontró a la compañía incursa en temeridad y la condenó al pago de $3,000.00 en honorarios de abogados.

Island Recycling interpuso una moción de reconsideración el 2 de febrero de 2024 en la que solicitó al foro primario dejar sin efecto y/o modificar la *Sentencia.* Señaló que, a base de la prueba que desfiló para récord el señor Colón Mejías, no probó los daños alegados, ni la negligencia imputada. A su vez, particularizó que no incurrió en temeridad. El 13 de febrero de 2024 el Tribunal de Primera Instancia declaró *No Ha Lugar* la antedicha solicitud de reconsideración.

Inconforme, Island Recycling sometió el recurso de apelación que nos ocupa, en el cual expone los siguientes señalamientos de error:

---

[2] La siguiente fórmula fue la efectuada por el Tribunal: "Utilizamos el índice de precios al consumidor que era 46.72. Luego dividimos 100 entre 46.72 para obtener el valor adquisitivo de dólar, que era 2.14 para 1978. Al multiplicar $20,000.00 por 2.14, obtenemos un resultado de $42,800.00 que constituye el ajuste por inflación. A su vez, esa suma debe dividirse por 0.76 que es el valor adquisitivo de dólar al presente. El total actualizado de la indemnización sería de $56,315.79."

Erró el Tribunal de Primera Instancia al sobre valorar los daños en el presente caso tomando en cuenta la valorización que el Tribunal Supremo de Puerto Rico ha determinado para este tipo de caso.

Erró el Hon. Tribunal de Primera Instancia al no sopesar las circunstancias particulares del caso incluyendo que se trata de una sola alegación de daños por incapacidad de 1% en la espalda baja, falta de licencia de conducir, entre otros.

Erró el Tribunal de Primera Instancia al no desestimar la demanda por obrar de mala fe y no incluir como parte indispensable, a saber, la compañía aseguradora cuyo nombre y número de reclamación conocía seis días después del accidente.

Transcurrido en exceso el término concedido al señor Colón Mejías para presentar su alegato sin que este presentara escrito alguno, procedemos a resolver sin el beneficio de su comparecencia.

## II.

## A.

El Artículo 1536 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 10801, establece que, "la persona que por culpa o negligencia cause daño a otra, viene obligada a repararlo". Esta disposición es el umbral de la responsabilidad extracontractual y obliga a quien ocasione daño por culpa o negligencia, a resarcir a la víctima.

Para probar una causa de acción por daños y perjuicios, el promovente deberá demostrar, mediante preponderancia de la prueba: (1) que se ha sufrido un daño; (2) por medio de un acto u omisión culposo o negligente; y (3) que existe un nexo causal entre la acción u omisión de la parte y el daño sufrido. *García v. E.L.A.,* 163 DPR 800, 809 (2005). Así pues, el que un demandante ostente el derecho a recibir indemnización por un alegado daño presupone la existencia de un nexo causal entre el daño y el factor que lo origina. Es decir, sólo corresponde indemnizar los daños que son consecuencia del hecho que obliga a la indemnización. *Rivera Jiménez v. Garrido & Co., Inc.,* 134 DPR 840, 851-852 (1993).

Se ha establecido que la culpa o negligencia consiste en "la falta del debido cuidado, que a la vez consiste en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias". *Pérez et al. v. Lares Medical et al.*, 207 DPR 965, 976-977 (2021); *López v. Porrata Doria*, 169 DPR 135, 151 (2006). Cuando se alegue haber sufrido daños como consecuencia de la negligencia de la parte demandada, el peso de la prueba respecto a la alegada negligencia le corresponde a la parte demandante. *Colón y otros v. Kmart y otros*, 154 DPR 510, 521 (2001); *Matos v. Adm. Servs. Médicos de PR*, 118 DPR 567, 569 (1987).

En Puerto Rico rige la teoría de la causalidad adecuada para determinar el nexo causal necesario para adjudicar responsabilidad civil. La causa adecuada es la que, según la experiencia general, ordinariamente produce los daños imputados. No es otra cosa que el evento o acto que con mayor probabilidad causó el daño por el que se reclama indemnización. *Miranda v. ELA*, 137 DPR 700, 707 (1994); *Negrón García v. Noriega Ortiz*, 117 DPR 570, 575 (1984). Así pues, un daño parece ser el resultado natural y probable de un acto negligente si después del suceso, y mirándolo retroactivamente el acto que se alega ser negligente, tal daño aparece como la consecuencia razonable y ordinaria del acto. *Montalvo v. Cruz*, 144 DPR 748, 756-757 (1998), citando a *Torres Trumbull v. Pesquera*, 97 DPR 338, 343-344 (1969).

Todos estos criterios se toman en consideración al evaluar la responsabilidad extracontractual. Sabido es que, como regla general, en un caso de daños y perjuicios donde se alegue haber sufrido daños como consecuencia de la negligencia de la parte demandada, el peso de la prueba respecto a dicha alegada negligencia le corresponde a la parte actora. *Colón y otros v. Kmart y otros*, 154 DPR 510, 521 (2001).

**B.**

Estimar y valorar daños es una labor difícil, ardua y angustiosa, pues no existen fórmulas matemáticas o científicas de especificidad exacta que indiquen como se justiprecia el dolor y el sufrimiento. *Sucn. Mena Pamias et al. v. Meléndez et al.,* 212 DPR 758 (2023); *Rodríguez et al. v. Hospital et al.,* 186 DPR 889, 909 (2012); *Herrera, Rivera v. SLG Ramírez-Vicéns,* 179 DPR 774, 791 (2010); *Nieves Cruz v. UPR,* 151 DPR 150, 169-170 (2000). No existe un sistema de computación que permita llegar a un resultado exacto con el cual todas las partes queden complacidas y satisfechas. *Santiago Montañez v. Fresenius Medical,* 195 DPR 476, 490 (2016). La valorización del daño descansa en la discreción, prudencia, juicio y razonabilidad del juzgador o la juzgadora de hechos motivado por un sentido de justicia y de conciencia humana. *Urrutia v. AAA,* 103 DPR 643, 647 (1975). Esta responde a factores únicos, por lo que debe ser considerada conforme a los hechos y circunstancias particulares de cada caso. *Nieves Cruz v. UPR,* supra, pág. 177. Debe añadirse, que les corresponde a los tribunales tomar en consideración "las circunstancias particulares del caso considerado [...]". De modo que, "el foro sentenciador no puede descansar meramente en un cálculo matemático. Es un análisis de dos pasos". *Sucn. Mena Pamias et al. v. Meléndez et al.,* supra.

Al medir el daño a ser compensado, el juzgador o juzgadora debe hacerlo a base de la prueba, procurando siempre que la indemnización no se convierta en una industria y se mantenga su sentido remediador, no punitivo. *S.L.G. Rodríguez v. Nationwide,* 156 DPR 614, 628 (2002). Por lo tanto, los tribunales deben buscar una proporción razonable entre el daño causado y la indemnización concedida, de suerte que la adjudicación sea balanceada, es decir, ni extremadamente baja ni desproporcionalmente alta. *Blás v. Hosp. Guadalupe,* 146 DPR 267, 342 (1998); *Santiago Montañez v.*

*Fresenius Medical*, supra, pág. 490; *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 203 (2013). Ello responde a que los jueces de instancia están en mejor posición que los tribunales apelativos para evaluar los daños, toda vez que estos son los que tienen contacto directo con la prueba presentada. *Blás v. Hosp. Guadalupe*, supra, pág. 339. En ese sentido, los tribunales apelativos no debemos intervenir con la apreciación de la prueba y con la valoración de daños que un tribunal de instancia haya realizado, **a menos que las cuantías concebidas sean ridículamente bajas o exageradamente altas.** (Énfasis nuestro). *Santiago Montañez v. Fresenius Medical,* supra, pág. 490; *Meléndez Vega v. El Vocero de PR*, supra, pág. 203.       Nuestro Tribunal Supremo ha establecido que, para evaluar si la compensación concedida por el Tribunal de Primera Instancia es ridículamente baja o exageradamente alta, debemos examinar la prueba desfilada ante ese foro y las cuantías otorgadas en casos similares resueltos anteriormente. *Herrera, Rivera v. SLG Ramírez-Vicéns,* supra, pág. 785. En esa dirección, las indemnizaciones adjudicadas en casos anteriores constituyen un punto de partida y referencia útil para pasar juicio sobre las concesiones otorgadas por el foro primario. *Rodríguez et al. v. Hospital et al.*, supra, págs. 909–910; *Herrera, Rivera v. S.L.G. Ramírez-Vicéns*, supra, pág. 785. Ello es así aun cuando es sabido que no existen dos casos exactamente iguales y que cada caso es distinguible según sus circunstancias particulares. *Íd.* De todas maneras, las compensaciones otorgadas en casos anteriores deben ajustarse a su valor presente. *Sucn. Mena Pamias et al. v. Meléndez et al.,* supra, citando a *Santiago Montañez v. Fresenius Medical*, supra, pág. 491.

Cónsono con lo anterior, el juzgador o la juzgadora tiene la obligación de especificar la jurisprudencia que utilizó como guía para valorar los daños al igual que el cómputo realizado para ajustar

las cuantías de casos anteriores a su valor actual y el caso que se encuentre adjudicando. Es forzoso explicar qué casos se utilizan como referencia y cómo las cuantías concedidas se ajustan en esos casos anteriores al caso que el tribunal tiene ante su consideración. *Santiago Montañez v. Fresenius Medical,* supra, pág. 493.

**III.**

Por estar íntimamente relacionados, discutiremos en conjunto los errores señalados por Island Recycling, que esencialmente arguye que el TPI erró al interpretar la prueba documental, testimonial y pericial disponible en el caso.

Island Recycling sostiene que erró el TPI al sobrevalorar los daños del señor Colón Mejías. Argumenta que la jurisprudencia relacionada a casos de responsabilidad extracontractual y las valorizaciones efectuadas por dicho foro es equivocada.

Como norma general, los tribunales apelativos no intervendremos con las determinaciones de hechos, con la apreciación de la prueba, ni con la adjudicación de credibilidad efectuadas por el TPI, salvo en situaciones en que éste haya incurrido en pasión, prejuicio, parcialidad o error manifiesto. *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 753 (2013); *Gómez Márquez et al. v. El Oriental,* 203 DPR 783, 793 (2020).

En este caso, al examinar cuidadosamente el expediente, con especial atención a la evidencia documental y la transcripción de la prueba oral, concluimos que no debemos intervenir con la apreciación de la prueba, ni con la adjudicación de credibilidad que el TPI les confirió a los testigos. El testimonio del señor Colón Mejías le mereció credibilidad al TPI, al igual que el del doctor Gómez Medina. La prueba es suficiente para adjudicar responsabilidad a Island Recycling. No percibimos que medió pasión, prejuicio, parcialidad o abuso de discreción en la apreciación de la prueba por parte del juzgador de hechos.

Así, colegimos que, en efecto, Island Recycling es responsable por la negligencia incurrida, la cual provocó los daños sufridos por el señor Colón Mejías en el accidente de tránsito acaecido. Era sensatamente previsible que el no suministrar el mantenimiento requerido al camión, podía producir un incidente. Lo anterior fue señalado por el testimonio del señor Colón Mejías y las fotos admitidas en evidencia durante el juicio.

De otra parte, los fundamentos esbozados por Island Recycling no nos persuade de que la indemnización concedida al señor Colón Mejías fuese arbitraria o excesivamente alta. Surge de la Sentencia apelada que el TPI utilizó *Canales Velázquez v. Rosario Quiles,* supra*,* para la valorización de daños físicos por su similitud a los hechos de esta controversia. Recordemos que el ejercicio de valoración de daños que realiza el juzgador de los hechos siempre involucra algún grado de especulación y elementos subjetivos, tales como la discreción y el sentido de justicia y conciencia humana. *Santiago Montañez, et al. v. Fresenius Medical Care, et al.,* supra, pág. 490.

Basado en lo antes expuesto, entendemos que resultan prudentes y razonables las cuantías concedidas por los daños y angustias mentales ocasionados. Por ello resultada evidente que no percibimos ninguna circunstancia que para intervenir en la determinación.

En su segundo señalamiento de error, Island Recycling expone que erró el Tribunal de Primera Instancia al no sopesar las circunstancias particulares: al indicar que se trata de una sola alegación de daños por incapacidad de 1% en la espalda baja y la falta de licencia de conducir. Evaluada la prueba presentada concluimos que dicho error tampoco se cometió. Surge del expediente ante nuestra consideración que el doctor Gómez Medina declaró en el juicio. Este concluyó que el señor Colón Mejías padece

de un 1% de impedimento en las funciones fisiológicas generales. Precisamente los daños adjudicados se circunscriben al porciento de incapacidad determinado por el facultativo médico. Nada de lo señalado por Island Recycling nos lleva a concluir de manera distinta. Además, la alegación de Island Recycling sobre la falta de licencia de conducir del señor Colón Mejías, carece de relevancia en la adjudicación de negligencia o los daños.

De otro lado, Island Recycling sostiene que no se incluyó en la sentencia cierto descuento de la ACAA, conforme a las disposiciones de la Ley Núm. 138 de 1968, conocida como la *Ley de Protección Social por Accidentes de Automóviles*. No obstante, la ley aplicable al momento de los hechos es la Ley Núm. 111 de 14 de agosto de 2020, 9 LPRA sec. 3161 *et seq.* (Ley Núm. 111-2020), según enmendada, conocida como la *Ley de Protección Social por Accidentes de Vehículos de Motor de 2020*. En la misma nada se dispone del argumento esbozado. Así, resulta evidente que no procede la exención automática a la que hace referencia Island Recycling.

Por último, Island Recycling aduce que erró el TPI al no desestimar la demanda, aun cuando el señor Colón Mejías obró de mala fe y no incluyó como parte indispensable la compañía aseguradora cuyo nombre y número de reclamación conoció a pocos días del accidente. No le asiste la razón.

Como se sabe, la relación entre un asegurado y la aseguradora es de naturaleza contractual, no solidaria. *Gen. Accid. Ins. Co. P.R. v. Ramos,* 148 DPR 523 (1999). Por lo que, la acción de un perjudicado contra el causante de sus daños es independiente, distinta y separada de su acción por los mismos hechos contra la compañía que asegura al referido causante de los daños. *Ruiz v. New York Dept. Stores,* 146 DPR 353, 364 (1998). De manera que, en una reclamación de daños y perjuicios, la parte perjudicada tiene la

opción de presentar la demanda directamente contra el causante del daño alegado, sin la necesidad de incluir a la aseguradora. En el presente caso, la aseguradora de Island Recycling no era una parte indispensable, por lo cual resulta inmeritoria dicha alegación.

En cuanto a los honorarios por temeridad impuestos a Island Recycling, razonamos que estos se sostienen. Lo anterior es una decisión discrecional del foro primario. En el caso de autos, la mencionada compañía no demostró que el TPI abusó de su discreción al hacer una determinación de temeridad en su contra. La conducta de la aludida entidad en el transcurso del caso movió al tribunal a tal determinación. Ante la ausencia de una decisión irrazonable y, toda vez que la cuantía de $3,000.00 impuesta no nos parece excesiva, no intervendremos con esta.

**IV.**

Por los fundamentos antes expuestos, se confirma la *Sentencia* apelada.

Lo acordó el Tribunal y lo certifica la Secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones